**Rita M. HOAR and Francis J. Hoar**

v.

**The SHERBURNE CORPORATION.**

**Civ. A. No. 5679.**

United States District Court,
D. Vermont.

May 21, 1971.

Kinney & Carbine, Rutland, Vt., for plaintiffs.

Wick, Dinse & Allen, Burlington, Vt., for defendant.

OPINION and ORDER

OAKES, District Judge.

This case, and the defendant's motion for judgment n. o. v., raise in almost pristine form, on relatively simple facts, highly complex questions going to the bases underlying the doctrines, so-called, of "contributory negligence" and "assumption of risk."

It is well to state first the facts, in the light most favorable to the plaintiff, to which light her jury verdict entitles her. Plaintiff Rita M. Hoar, a sometime skier, came to Killington Mountain, Vermont, to watch her children ski in a race sponsored by the defendant, The Sherburne Corporation, which owns (and leases) for its ski lifts portions of the mountain. The defendant also leases land on both sides of the state-owned "access road" to the ski lift area. Defendant's "Ramshead Lodge" is directly across the access road from its "Snowshed," a building which houses a ski shop. Plaintiff and her husband had paid a small fee to enter the children in the race, which was run by the defendant both as a public service and to promote skiing generally and the Killington area particularly.

Plaintiff and her husband went to the Ramshead Lodge where Mr. Hoar obtained racing bibs for the children. Mr. and Mrs. Hoar then crossed the access road on foot following a well-defined, well-used and the only nearby, convenient pathway (which leads across the road) over to Snowshed. The purpose of the trip across was to find the plaintiff some "warm-up" pants, but defendant's ski shop had none that she liked or at least wanted to buy. On the way to Snowshed it started to "spit snow."

Plaintiff noticed that the path across the road was very icy and had not been sanded, but she did not fall crossing the first time. She spent about fifteen minutes at Snowshed and, returning toward Ramshead, looking where she was going and observing the ice in her path, slipped and fell. The Hoars had been returning to Ramshead to watch their children ski and possibly, to buy lift tickets for themselves.

Taking the evidence in the light most favorable to the plaintiff, the jury found that she was a business visitor, carefully proceeding across an unsafe path which, if not owned by the defendant, was subject to the defendant's control.[1] We say "carefully proceeding" for there is no evidence to suggest that plaintiff was wearing improper footwear (she was wearing ski boots in a ski area), looking absentmindedly away, or doing anything other than walking normally.

Defendant had the duty to keep the premises over which it had control "in a safe and suitable condition." Forcier v. Grand Union Stores, 264 A.2d 796, 799 (Vt.1970) (slip on the proverbial banana peel); see Wakefield v. Levin, 118 Vt. 392, 397, 110 A.2d 712 (1954). An "invitation" such as defendant issued to plaintiff here "carries with it some measure of assurance of safety, which [defendant] must make good, by the exercise of active care if necessary." Forcier v. Grand Union Stores, *supra*, 264 A.2d at 799; Wool v. Larner, 112 Vt. 431, 436, 26 A.2d 89 (1942). In other words, a person such as the defendant here, having control of land, has the "duty [to] have taken reasonable steps to obviate the danger * * *." Forcier v. Grand Union Stores, *supra*, 264 A.2d at 799, as by sanding the pathway. With plaintiff's fall occurring after nine o'clock in the morning the jury could well have found that the defendant had ample time within which to have taken those reasonable steps; and any claim of lack of knowledge of the condition of the pathway on the part of the defendant does not serve it as a defense, because "voluntary ignorance may constitute negligence if the detection of danger can be accomplished by reasonable vigilance." Forcier v. Grand Union Stores, *supra* 264 A.2d at 800; Thompson v. Green Mountain Power Co., 120 Vt. 478, 483, 144 A.2d 786 (1958).

Nor is the fact that plaintiff might have crossed the access road some considerable distance down the road significant since there was no showing that any such a crossing would have been safer. Cf. Smith v. Monmaney, 127 Vt. 585, 591, 255 A.2d 674 (1969); Baldwin v. Vermont Railways, 126 Vt. 70, 76, 223 A.2d 556 (1966).[2]

---

1. The jury may have inferred that the fall occurred outside the boundaries of the access road, although the plaintiff and her husband testified otherwise, from the testimony of one of defendant's employees and the fact that the diagram which he made and which was an integral part of the defendant's file had rather oddly disappeared. But there was evidence that defendant occasionally sanded the pathway across the road after snow storms, posted employees to direct vehicular traffic, permitted its skiers to track snow across the road at the crossing point, and had signs warning skiers not to cross at this point while wearing skis. From this evidence the jury could well have inferred that the defendant exercised sufficient control over the crossing point to be held as an occupier, though not an owner. Cf. Restatement (Second) of Torts § 350 (1965); see

Smith v. Monmaney, 127 Vt. 585, 588, 255 A.2d 674, 676 (1969) ("The determinant issue * * * is possession and control of the area which gives rise to the injury").

2. Berry v. Whitney, 125 Vt. 383, 217 A. 2d 41 (1966), disposes of defendant's argument that plaintiff could have walked some distance up the road to cross it to get to Snowshed: "Whether there was another entrance to the house that plaintiff could have used is not a controlling factor, in this case. It was for the jury to say whether, being obliged to leave the house, the plaintiff did use the stairway in the manner claimed by the defendants, or whether, under the facts disclosed by the evidence, she should have used the other entrance." 125 Vt. at 388, 217 A.2d at 44.

Both contributory negligence and assumption of risk were submitted to the jury under appropriate instructions, the correctness of which is not in issue here. What is involved is whether plaintiff is barred from recovery as a matter of law on either theory or both.

The rubrics incanted by the courts when they discuss the "doctrines" of contributory negligence and assumption of the risk are familiar to us all. As to a "gratuitous licensee" or social guest, of whose presence the landowner is unaware, the only duty imposed on the owner is "not to do any willful or wanton act to injure [the guest]." Lomberg v. Renner, 121 Vt. 311, 315, 157 A.2d 222, 225 (1959); see Garafano v. Neshobe Beach Club, 126 Vt. 566, 569, 238 A.2d 70 (1967).

But as the Supreme Court of Vermont has pointed out, "the course of judicial decisions has been toward broadening the class of invitees or business guests," Cameron v. Abatiell, 127 Vt. 111, 115, 241 A.2d 310, 313 (1968), and as to business visitors or invitees a landowner has the duty

to use reasonable care to keep its premises in a safe and suitable condition so that the [business visitor] would not be unnecessarily or unreasonably exposed to danger, and if a hidden danger existed, known to the [landowner], but unknown and not reasonably apparent to the [business visitor], to give warning of it to the latter, who has a right to assume that the premises, aside from obvious dangers, were reasonably safe for the purpose for which he was upon them, and that proper precaution had been taken to make them so.

Morgan v. Renehan-Akers Co., Inc., 126 Vt. 494, 496, 236 A.2d 645, 647 (1967); Johnstone v. Bushnell, 118 Vt. 162, 165, 102 A.2d 334 (1954).

As to the conduct of the visitor to premises, the rubric runs, "where the defect or danger is patent or obvious it is contributory negligence to fail to exercise ordinary care to avoid it." Wall v. A. N. Derringer, Inc., 119 Vt. 36, 38, 117 A.2d 390, 391 (1955), quoted in Lattrell v. Swain & Swain, 127 Vt. 33, 40, 239 A.2d 195 (1968); cf. Dooley v. Economy Store, Inc., 109 Vt. 138, 141, 194 A. 375 (1937) (which, however, holds the store owner not negligent and doesn't mention contributory negligence).

The doctrine of assumption of risk, we are told,

has no application unless there is knowledge of the existence of the risk, together with an appreciation of the extent of the danger. One cannot assume a risk unless one knows about it, appreciates it, and consents to assume it.

Killary v. Chamber of Commerce, 123 Vt. 256, 262, 186 A.2d 170, 174 (1962), quoted in Berry v. Whitney, 125 Vt. 383, 387, 217 A.2d 41 (1966).

Put another way, if the business visitor

voluntarily, that is, by the exercise of free will and intelligent choice, put himself in the way of the danger which he knew and comprehended, or was so obvious that he must be taken to have known and comprehended it,

he may be found by the jury to have assumed the risk, Lattrell v. Swain & Swain, 127 Vt. 33, 40, 239 A.2d 195, 200 (1968).

It is the application of these phrases or doctrines, as one may choose to call them, that presents problems. There are plainly times when an obvious distinction is made and the Vermont Supreme Court has spoken of contributory negligence, distinguished it from assumption of the risk and said there is a jury question as to the former and not as to the latter.

Thus, in Cameron v. Abatiell, 127 Vt. 111, 241 A.2d 310 (1968), the court held that contributory negligence of a police officer, injured in a night-time fall when a step broke on a business building staircase which the officer was checking, was a question for the jury; but that as a matter of law he had not "assumed the risk" even though he knew the steps were wobbly and had not used a flashlight or the handrail.

On the other hand there are times when the doctrines of "contributory negligence" and "assumption of risk" are applied almost interchangeably. Thus, in Wall v. A. N. Derringer, Inc., 119 Vt. 36, 117 A.2d 390 (1955), a case decided when Vermont plaintiffs still had the burden of proving freedom from contributory negligence, the court held that a plaintiff had not met the burden as a matter of law when she looked straight and failed to notice a step that she had previously seen on entering defendant's place of business, the court saying:

> Even though the plaintiff had the right to assume that the premises, aside from obvious dangers, were reasonably safe for the purpose for which they were adapted, Cole v. North Danville Coop. Creamery Ass'n, 103 Vt. 32, 40, 151 A. 568, the owner of the premises is not liable to one who goes thereon as an invitee for injuries resulting from a danger that was obvious to the latter or should have been observed in the exercise of ordinary care. Dooley v. Economy Stores, Inc., 109 Vt. 138, 141, 194 A. 375.

> Where the defect or danger is patent or obvious it is contributory negligence to fail to exercise ordinary care to avoid it. 119 Vt. at 38, 117 A.2d at 391.

On the other hand, Berry v. Whitney, 125 Vt. 383, 217 A.2d 41 (1966), decided when, as now, the defendant has the burden of proof of assumption of risk, held that a tenant who slipped on a common stairway had not as a matter of law "assumed the risk" of porch steps made slippery by the combination of rain and fresh paint, the court quoting Killary v. Chamber of Commerce, 123 Vt. 256, 262, 186 A.2d 170, 174 (1962), in saying:

> "The assumption of risk doctrine has no application unless there is knowledge of the existence of the risk, together with an appreciation of the extent of the danger. One cannot assume a risk unless one knows about it, appreciates it, and consents to assume it." See also Roberts v. Gray, 119 Vt. 153, 157, 122 A.2d 855.

Berry v. Whitney, 125 Vt. at 387, 217 A.2d 41.

Similarly, while the Vermont Supreme Court in Morgan v. Renehan-Akers Co., 126 Vt. 494, 236 A.2d 645 (1967), treated the question of contributory negligence on the part of a plaintiff—finding none —when he stepped backward into a hole on a platform scale, in Garafano v. Neshobe Beach Club, 126 Vt. 566, 238 A. 2d 70 (1967), the court considered both assumption of the risk and contributory negligence—also finding none—when a center fielder in a softball game stepped into a hole in the outfield while chasing a fly ball.

In Lattrell v. Swain & Swain, 127 Vt. 33, 239 A.2d 195 (1968), these doctrines are considered interchangeably in a decision holding that a jury could properly have found (a) that a defendant was not guilty of actionable negligence, (b) that the plaintiff was guilty of contributory negligence and (c) that the plaintiff had assumed the risk. The plaintiff had parked his truck under the eaves of defendant's barn to unload hay, the plaintiff could see the roof covered with snow but he did not pay any attention to the snow, which, as snow on a metal barn roof in Vermont in March is wont to do, fell off the roof, causing plaintiff to be injured.

Smith v. Monmaney, 127 Vt. 585, 255 A.2d 674 (1969), is Vermont's latest snow and ice case. The plaintiff thought her apartment's house's front steps were wet but didn't realize they were icy until she stepped on the first step, only to slip and fall. The court first held that a landlord has the duty to use "proper diligence in keeping [common passageways] reasonably safe from the dangers incident to accumulations of ice and snow." 127 Vt. at 588, 255 A.2d at 676. The court went on to hold that it is a jury question whether "in the exercise of reasonable oversight," the landlord ought to have known of the existence of a dangerous condition created by an absence of a step railing and "the accumulation of ice and snow that were bound to develop in the ordinary experience of the Vermont winter climate."

The landlord, the court said, should have provided "reasonable safeguards against" that hazard. 127 Vt. at 589, 255 A.2d at 677.

As to assumption of risk and contributory negligence, the *Smith* case had this to say:

> The facts presented here made it permissible for the jury to find that the plaintiff assumed the risk created by the defendants' failure to keep the steps reasonably safe. However that was not the limit of the danger nor her risk. The top step was coated with ice, although the plaintiff testified she thought it was only wet. In the breaking daylight early in January, the deception would be understandable. The issue was for the jury to resolve.
>
> The plaintiff was deprived of the choice of a safer route. See Baldwin v. Vermont Railways, 126 Vt. 70, 76, 223 A.2d 556. And whether she exercised reasonable care for her own safety in not waiting from work until the steps were sanded or their condition known, relates to the issues of contributory negligence. Restatement, Torts § 466; Harper & James, The Law of Torts § 21.1. In any event, both defenses were properly submitted to the jury. Berry v. Whitney, 125 Vt. 383, 387, 217 A.2d 41; Manley v. Haus, 113 Vt. 217, 223, 32 A.2d 668. 127 Vt. at 591–592, 255 A.2d at 678.

The Vermont cases do not furnish a clearly controlling precedent. The implication of the language in Cameron v. Abatiell, 127 Vt. 111, 241 A.2d 310 (1968), that a business visitor had "a right to assume that the premises, *aside from obvious dangers*, were reasonably safe [emphasis supplied]," 127 Vt. at 118, 241 A.2d at 315, is of course that the business visitor may be without rights in respect to *obvious* dangers.

The decision held, however, that the business visitor, a police officer, had not assumed the risk as a matter of law of a broken step, even though he knew the steps were wobbly and did not use a flashlight or the handrail. *Cameron* was not a case of an obvious danger in the particular, although the steps might be said to have been, generally speaking, obviously dangerous.

Berry v. Whitney, 125 Vt. 383, 217 A.2d 41 (1966), and Smith v. Monmaney, 127 Vt. 585, 255 A.2d 674 (1969), both held that a plaintiff slipping on stairs could not be held to have "assumed the risk" as a matter of law. But the *Berry* plaintiff knew the steps were freshly painted, although she hadn't used them when they were wet. The *Smith* plaintiff knew the steps were wet, and there was no handrail, but she hadn't realized in the "breaking daylight" that the top step was coated with ice. Thus, in both these cases, it can be said the particular causative danger was unknown, although the general hazard was obvious.

In our case, it can be argued that the spitting snow made the ice on the road more slippery, a fact well known to Vermont juries (and presumably judges), so that here, also, while a general hazard was apparent, the particular, causative danger was not. But the plaintiff, a New Hampshire-ite, knew the sky was spitting snow, and knew the road was icy, having crossed it some fifteen minutes before. Thus, if there were a particular danger, she too should have known it.

Moreover, the *Smith* and *Berry* cases both involved *tenants* who, in the view of at least one noted text, are in one of the special classes not barred from recovery "simply because" they choose deliberately to encounter a fully known danger.[3] This isn't a point relied on by the Vermont Supreme Court, but it may

---

3. 2 Harper and James, The Law of Torts § 21.1 at 1165–66; Gibson v. Hoppman, 108 Conn. 401, 143 A. 635 (1928). The seven classes of cases enumerated by Harper and James carry no common denominator. Are they exceptions to a general rule, or are they simply situations in which the courts have considered that the duty to maintain safe premises exists because the relationship between plaintiff and defendant is not wholly voluntary?

be essential to any close analysis of the cases.

Thus, so far as present-day Vermont law is concerned, this case, involving a business visitor deliberately encountering a known and comprehended danger, where the possessor has at least a primary duty to maintain safe premises, is unique. We say present-day Vermont law advisedly, because doubtless, were *Dooley v. Economy Store*, 109 Vt. 138, 194 A. 375 (1937), still the law, the defendant would not be liable. *Dooley,* holding a store owner *not negligent* in failing to provide railing on a staircase, says:

> That the lack of a railing, standing alone, did not constitute actionable negligence is clear, since the owner of premises is not liable to one who goes thereon as invitee for injuries resulting from a danger that was obvious to the latter or should have been observed by him in the exercise of ordinary care. 109 Vt. at 141, 194 A. at 377.

The *Smith* case attempts to distinguish *Dooley* rather than overrule it expressly, because there was snow and ice in *Smith.* 127 Vt. at 588–589, 255 A.2d 674. *Dooley,* however, involved a defective step in addition to the absence of a handrailing, and in the light of *Cameron, supra,* and *Forcier, supra,* as well as *Smith, supra,* can no longer be considered controlling even if it has not been expressly overruled. The occasional banana peel in *Forcier* can hardly be considered less of a hazard than the perpetually missing handrail of *Dooley.* One can only surmise that the years 1937 to 1970 have seen the Vermont court take a more expanded view as to what constitutes actionable negligence on the part of store owners to business visitors, the very kind of view that Rothberg v. Olenik, 262 A.2d 461 (Vt.1970), referred to in saying, "the judiciary should be alert to the never-ending need for keeping its common law principles abreast with the times," 262 A.2d at 467.

So we turn to the texts or treatises on which the Vermont courts most rely for guidance—Harper and James and the Restatement of Torts.

Harper and James point out that the phrase "assumption of risk has led to no little confusion because it is used to refer to at least two different concepts" —concepts which overlap but which are nevertheless quite distinct. 2 Harper and James, The Law of Torts § 21.1, at 1162 (1956). The first of these concepts is that the plaintiff's "assumption of a risk is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk." The second concept is that in which a plaintiff may be said to assume a risk created by the defendant's breach of duty when he—the plaintiff—deliberately chooses to encounter that risk. In the second sense of the term the plaintiff is barred from recovery only if he acted unreasonably in encountering the risk under the circumstances, and in one sense this, as Harper and James point out, may be termed contributory negligence, albeit in a broad sense. 2 Harper and James, *supra,* § 21.1. See also Restatement (Second) of Torts § 466, comments C, D (1965).

In Harper and James' first sense, equating the risk assumed with the limit of defendant's duty, the relationship of the plaintiff to defendant is all important; the duty owed by the defendant to the plaintiff varies, the cases have said, with the relationship between them. Thus, as to a known gratuitous licensee (and as to a known trespasser), there is no duty on the part of a landowner to make or cause the premises to be safe; the duty, aside from the duty to use active care to protect the licensee or trespasser from willful acts or force negligently brought to bear, is the duty simply to warn of known and concealed defects. 2 Harper and James, *supra* § 21.1 at 1164; see Lomberg v. Renner, 121 Vt. 311, 315, 157 A.2d 222 (1959) (social guest falling into stairwell).

> Harper and James go on to say that
> even one who enters ordinary private premises, for a purpose in which the owner or possessor has an interest,

takes the risk of dangers which he fully comprehends, or which are as perfectly obvious as a walkway covered with glare ice in the daytime.

This is a somewhat roundabout way, perhaps, of referring to business visitors, but it doesn't help the plaintiff here. For the key case relied upon for this conclusion (as we don't think the Vermont court would rely too heavily on the Texas Court of Civil Appeals also cited), Harper and James refer us to Paubel v. Hitz, 339 Mo. 274, 96 S.W.2d 369 (1936), another case of the *Dooley* era.

Paubel v. Hitz, *supra*, holds that a mailman slipping on a walkway covered with slush and chicken dirt cannot recover from the chicken business to which he was delivering mail, the court speaking, *ipse dixit*, after the English cases, *"volenti non fit injuria,"* as if the mailman wanted to slip while he was carrying out his duties.[4] Presumably, if he had not delivered the mail, in the light of the post office motto, he would have been fired. *Volenti non fit injuria*, indeed!

Paubel v. Hitz, *supra*, might be thought a pretty slim reed for such a learned (and persuasive) text on which to rest such a general proposition. But the text's own footnote reveals the answer. The footnote concedes that the proposition stated in the text relates to a condition "which—though obvious—would constitute negligence to one who is owed *the full duty of care* [emphasis supplied]." 2 Harper and James § 21.1 at 1164, n. 11. The footnote points out that the *Paubel* court distinguished cases of common hallways in an apartment and sidewalk cases where tenants and travelers respectively "have rights superior to the invitee on private property." *Ibid.* If *Paubel* was the 1936 law of Missouri, it doesn't seem to be the 1970 law of Vermont, as the police officer in Cameron v. Abatiell, 127 Vt. 111, 241 A.2d

310 (1968), happily found out. At least, as *Cameron* says, citing 2 Harper and James § 27.12, 1478, "The course of judicial decisions has been toward broadening the class of invitees or business guests." 127 Vt. at 115, 241 A.2d at 313. And the plaintiff here is in as favorable a relationship to the landowner as the police officer, if not more so, since she was contemplating business dealings.

Harper and James' seven classes of exceptions to the general rule that assumption of risk in their first sense applies to known dangers doubtless represent a careful case by case analysis of what has been done by many courts in this area. Their exceptions are as follows: (1) travelers in highways not closed for repairs; (2) tenants in common passageways; (3) patrons of a public utility using facilities appurtenant to the utility's service; (4) a landowner denied access to his own premises; (5) a person at a place where he has a right to be without regard to defendant's consent; (6) a plaintiff moving to a nuisance, or using his own land so as to increase the hazard caused by defendant's own wrongful use of land; (7) a plaintiff in a rescue situation. 2 Harper and James § 21.1, 1165–67. But aren't all of these exceptions based on the underlying proposition of foreseeability of harm that must be at the basis of all thinking as to negligence? Haven't they been carved out by the courts on the basis of an expanding concept of foreseeability, based, perhaps, on expanding concepts of social responsibility? Aren't the more recent cases saying that the price, so to speak, of doing business, includes responsibility for foreseeable harm to business visitors? Would Vermont, in the light of the forceful language of *Forcier*, *supra*, say any less? Harper and James do not, however brilliant they may be, show us the light down this diversity pathway.

---

4. The court also said, shedding little added light on the subject: "Generally speaking, the legal duties imposed on the possessor increase or decrease with the beneficial interest of the possessor in the presence of the other on the premises; and, as a corollary, corresponding shifts occur in the legal rights of the party on the premises." 96 S.W.2d at 373. Getting the mail has a lot of "interest" to a businessman.

But we do have the Restatement of Torts, relied on again and again by the Vermont Supreme Court, so to it we turn:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated. Restatement (Second) of Torts § 343A (1965).

The Restatements seem to put some emphasis on the voluntariness of entering the relationship:

Such reason [to expect harm to the visitor from known or obvious dangers] may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances. Restatement (Second) of Torts § 343A, comment *f* (1965).

The Restatement's illustration, Illus. 5, bears out the proposition that one test is voluntariness in assuming the relationship:

A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. *Her only alternative to taking the risk was to forego her employment.* A is subject to liability to C. (Italics supplied.)

This analysis is fine, but where does it lead us here?

Here, it will be remembered, the plaintiff crossed the access road for the purpose of looking at warm-up pants, not with the idea that they were positively needed to combat the freezing temperatures on the mountain. Rather, as the plaintiff herself testified, "This was the end of the season and we thought we might be able to get a good buy on them." She was out for a little bargain, so she encountered a risk that is well known in ski areas and northern New England climes—accumulated ice and snow on a road, with the weather starting to "spit snow." If the plaintiff's motive is the ultimate test, then plaintiff must lose, for like all injured people she could have stayed at home and never ventured forth.

The Vermont court has not taken such a view of the law. In no case to come to the court's attention has the question turned on voluntariness. Indeed, in Garafano v. Neshobe Beach Club, Inc., 126 Vt. 566, 238 A.2d 70 (1968), a Chamber of Commerce member playing softball at a summer cottage steak roast was held to be a business visitor when on common recreational grounds owned by a corporation of which the cottage owner was a member. In the broad sense, every relationship can be said to be voluntary; in the narrow confines of modern society, one can wonder whether any relationship is. Was *Paubel's* mailman or *Cameron's* police officer acting with greater or lesser freedom of choice than the Restatement's lady office worker? Should liability in Mrs. Hoar's case here turn on whether she really needed those warm-up pants?

This court, in attempting to predict what the Vermont Supreme Court would do in the year 1971, is forced to reject the Restatement's test, to the extent that it depends upon voluntariness, as a measure of the defendant's responsibility. We

suspect the plaintiff would be treated by the Vermont court as if she had been a skier going for a cup of coffee, or were a visitor to a restaurant, dressed in city clothes, going by the same route. To a business visitor are owed certain duties —duties to keep premises reasonably safe. When those duties are not met there is negligence. The risk of unsafe premises is not assumed by business visitors, although licensees (and trespassers) assume the risk of obvious dangers. Business visitors may, however, be guilty of contributory negligence, by acting unreasonably under the circumstances.[5] This is a jury question, in this case, as in any other, and as to it the Vermont legislature has said the defendant has the burden of proof. 12 V.S.A. § 1024. Since this question was properly submitted to the jury, and the jury has found no contributory negligence, there is liability.

Motion for judgment n. o. v. denied.

---

5. See Restatement (Second) of Torts § 473, comments c, d (1965). This is "assumption of risk" in Harper and James' second sense, the sense of contributory negligence. See 2 Harper and James, *supra*, § 21.1.