## Shirley Waite and Richard Waite v. Patrick T. Brown and Beverly A. Brown

[312 A.2d 915]

No. 31-73

Present: **Barney, Keyser, Smith and Daley, JJ., and Hill, C. Supr. J.**

Opinion Filed December 4, 1973

*George R. McKee, Esq.,* Burlington, for Plaintiffs.

*Pierson, Affolter & Amidon,* Burlington, for Defendants.

**Keyser, J.** This is an action to recover damages for injuries to Shirley Waite caused by a fall down an outside stairway when the handrail gave way. The stairs led to the ground from a back porch entrance to the ground floor apartment occupied

by the plaintiff and her family in the four-apartment building owned by the defendants. At the close of plaintiff's evidence, the court granted defendants' motion for a directed verdict and entered judgment accordingly, whereupon only plaintiff Shirley Waite appealed.

The central issue on this appeal is whether the lower court correctly granted the defendants' motion for a directed verdict.

In ruling on the motion for a directed verdict, the lower court was required to view the evidence in the light most favorable to the plaintiff, exclude the effect of modifying evidence, and resolve all conflicts against the defendants. Any contradictions and contrary inferences were for resolution by the jury. Any substantial evidence that fairly and reasonably tended to support the plaintiff's claim required submission of the case to the jury. *Dindo* v. *Denton*, 130 Vt. 98, 109–10, 287 A.2d 546 (1972); *Burleson* v. *Caledonia Sand & Gravel Co.*, 127 Vt. 594, 255 A.2d 680 (1969).

The plaintiff need only introduce evidence that tends to support her claim; the court cannot consider the weight of the evidence. *Hedman* v. *Siegriest*, 127 Vt. 291, 294, 248 A.2d 685 (1968).

The lack of any conflicting or modifying evidence, which the defendants assert is the situation here, does not automatically keep the case from the jury. "Circumstances which are undisputed often give rise to conflicting inferences of cause and effect." *Boston & Maine Railroad* v. *Howard Hardware Co.*, 123 Vt. 203, 209, 186 A.2d 184 (1962).

The facts developed by the evidence before the court below, viewed most favorably to the plaintiff, are as follows: Plaintiff, a large woman weighing over 200 pounds, stepped out of the back door of her apartment to hang out a venetian blind to dry. There was a little step down from the door onto a small uncovered porch, or landing, which was just large enough for one or two chairs. When plaintiff stepped out of the door she grabbed the hand rail at the top of a narrow, four-step stairway leading to the ground. The rail collapsed when plaintiff took hold of it, and plaintiff fell down the steps to

the ground. The railing which gave way was attached to stairs at the edge of the porch. It was necessary to use these stairs and the porch to enter the rear door to her apartment. There was a door in her apartment which led down to a cellar where the gas, electric and hot water meters and fuse boxes were located. Storm windows and other items were stored there by the upstairs tenants. Because of this utilization of the cellar, there was travel on her back porch and stairway and, in addition, use was made of this entrance by her, her family, and guests. The meters were for apartments other than the plaintiff's, and utility men entered to make readings. The upstairs tenants employed the porch as an avenue of approach to the cellar when necessary to replace a blown fuse and to store or retrieve the storm windows. The defendants also used the porch to get to the cellar. The plaintiff and her family had lived in the apartment for about nine years. Rent was collected by Mr. Brown each week.

After the accident, the defendants' employee repaired the steps and also constructed a new railing. He testified that the old railing was "pretty well weatherbeaten." The wood railing and uncovered porch had been exposed to the elements for at least nine winters. During that period the sole maintenance was one painting of the porch but the railing was not painted or repaired.

About a year before the accident, the plaintiff asked the defendants to have someone look at the porch. She did not ask for an inspection of any particular area of the porch. Her concern was caused by its overall ancient appearance. The defendants did nothing in response to her request.

The defendants moved for a directed verdict on three grounds. First, they contended that there was not sufficient evidence to support the plaintiff's claim that the porch and stairway was an area over which the landlord retained possession and control, and therefore there was no duty to maintain such in a safe condition. Second, even if the stairway was a common area, there was no evidence that the railing was defective. Third, even if the railing was defective, there was no evidence that the defendant failed to exercise reasonable care, because he was not given notice of any defect that would have been discovered by an inspection, or that an inspection would be prudent.

The record does not disclose which ground or grounds advanced by the defendants persuaded the court to grant the motion, but the obvious interrelationship of the three grounds requires that we consider all of them. The record before us presents no potential grounds for affirmance beyond those raised by the defendants. See *State* v. *Clark*, 130 Vt. 500, 502, 296 A.2d 475 (1972).

■ The parties agree that unless the porch and stairway were under the possession and control of the landlord there was no duty on the landlord to exercise reasonable care to maintain them. *Beck* v. *Dutra*, 129 Vt. 615, 617, 285 A.2d 732 (1971); *Smith* v. *Monmaney & Speno*, 127 Vt. 585, 588, 255 A.2d 674 (1969); *Garafano* v. *Neshobe Beach Club, Inc.*, 126 Vt. 566, 574–75, 238 A.2d 70 (1967). The disagreement is over whether the plaintiff produced enough evidence to require submission of the issue of the landlords' retained possession and control to the jury.

■ ■ At the outset it is significant to note that there is no written lease between the landlord and tenant to shed light on the control issue. The proper approach in this situation is found in *Panaroni* v. *Johnson*, 158 Conn. 92, 256 A.2d 246, 251–52 (1969):

> Unless it is definitely expressed in the lease, the circumstances of the particular case determine whether the lessor has reserved control of the premises or whether they were under the exclusive dominion of the tenant, and it becomes a question of fact and is a matter of intention in the light of all the significant and attendant facts which bear on the issue.

Further strong support for submitting the instant case to the jury is furnished by the statement that "[t]he making of repairs by the landlord, in and of itself, may denote a retention of control or may be an indicia of limited, temporary or full control." *Panaroni* v. *Johnson, supra*, 256 A.2d at 252.

The defendants cite authorities, including a Vermont case, which they claim support the proposition that evidence of subsequent repairs by the landlord is not relevant to show retained possession and control. These cases are distinguish-

able. In *Jackson* v. *919 Corporation,* 344 Ill. App. 519, 101 N.E.2d 594, 598 (1951), the provisions of the lease governed the control issue. In *Lavigne* v. *Rossetti,* 118 Vt. 456, 114 A.2d 407 (1955), the landing and porch were apparently expressly demised to the tenants in the lease, and entrance to make subsequent repairs was by permission of the tenant. These two cases only support the proposition that where control has been expressly granted to the tenant, evidence of the landlord's subsequent repairs will not override the express grant. In *Delphia* v. *Proctor,* 124 Vt. 22, 196 A.2d 567 (1963), the Court held that evidence of the landlord's subsequent repairs in the cellar would not aid a plaintiff's action for damages allegedly caused by a defect in the second floor apartment.

Where control has not been expressly granted to one party or the other but remains the issue, the Vermont law agrees with that of Connecticut. Our leading cases are *Beaulac* v. *Robie & Slayton,* 92 Vt. 27, 102 A. 88 (1917), and *Cameron* v. *Abatiell,* 127 Vt. 111, 241 A.2d 310 (1969). In each case the injury was to a third party invitee to whom a duty of reasonable care to maintain the premises was owing by the person in control of the premises. The issue in those cases was whether the lessor or the lessee was in control.

In *Beaulac* the Court said at p. 30:

> As the case stood it was material to show which defendant was responsible for the platform being out of repair; and evidence that [the lessor] subsequently, and while the terms of the lease remained the same, made repairs on it, would, in the circumstances, have some tendency to show that he retained control of it.

As pointed out *supra,* a "tendency" is sufficient to place the plaintiff's claim before the jury.

In *Cameron* the Court, in reversing the grant of a directed verdict, held at p. 119:

> In the posture of the evidence presented there was a factual question for resolution by the jury of whether defendants Abatiell [lessors] or defendant Pyrofax [lessee] were in control of the platform and stairs and under the duty to keep them reasonably safe.

■ This Court has not squarely held that, where the lease is silent, evidence of one instance of repairs and no other evidence is sufficient to submit the control issue to the jury. It hypothesized in *Beaulac, supra,* 92 Vt. at 30, that such evidence might not be enough. But there, as here, it was not necessary to decide the point, because of the other evidence of landlord control which the plaintiff had introduced.

■ And, in addition to the other evidence which the plaintiff in the instant case produced below, defendants' counsel admitted on oral argument that the landlord had granted a right of way to the upstairs tenant across plaintiff's porch. A grant to another tenant of this kind was one of the factors enumerated in *Beaulac, supra,* as supplemental to the subsequent repair evidence, and hence made the control question for the jury.

The defendants argue that the plaintiff produced no evidence that her back porch was not in her lease, and that she must do so to get to the jury. They cite *Martel* v. *Malone,* 138 Conn. 385, 85 A.2d 246 (1951), for the proposition that, in the absence of any agreement between the landlord and tenant, entrances and exits such as porches and stairways are considered integral parts of the leased premises and presumed to be within the exclusive control of the tenant.

A careful reading of *Martel* reveals no conflict with *Panaroni* v. *Johnson, supra.* In *Martel,* the Connecticut court did say that it was immaterial whether the stairway which was the cause of the accident was mentioned in the lease, but only, because on the undisputed facts, the stairway had to be considered within the exclusive control of the tenant. The stairway was the only entrance to the tenant's apartment, and the plaintiff had not presented any evidence of common usage, grants of right of way, or repairs.

The court then, speaking generally, said that an agreement between a landlord and tenant may be express or implied, and "[w]hether there was an implied agreement presents a question of fact, . . . to be determined in the light of all of the significant circumstances." *Martel* v. *Malone, supra,* 85 A.2d at 249.

█ The defendants contend that even if the porch and stairway were a common use area, the use made by others was too minimal to compel submission of the control issue to the jury. It is not now necessary to delineate the quantity of use by others which a tenant must testify to in order to get to the jury. The plaintiff's evidence of use by others and the subsequent repairs by the landlord, the lack of any express provision in the lease, and the granting of the right of way to another tenant across plaintiff's porch by the landlord are certainly cumulatively sufficient support for a holding that the lower court could not correctly have granted a directed verdict on the issue of retained possession and control.

The second ground advanced by defendants in support of their motion for a directed verdict is that there was insufficient evidence of a defective condition for the case to be submitted to the jury. The evidence before the court was that the entire porch area was old and that the railing was "well weather beaten".

█ "Weather-beaten" is defined in Webster's Seventh New Collegiate Dictionary as "1. worn or damaged by exposure to weather 2. toughened, tanned, or bronzed by the weather." Thus, a jury could draw the inference that the weather-beaten railing was dangerously damaged. It could also draw the inference that a weather-beaten railing had a healthy, outdoor hue. The key point is that such contrary inferences are for the jury's resolution.

█ Defendants' third ground is that even if a jury could find that the railing was defective there was no way that it could find that such defect would have been discoverable by the landlord's inspection. The inference is that a railing externally defective may still be very solid structurally.

However, the testimony before the court was that no inspection was made by the landlord. In fact, the testimony was that the defendant did nothing in response to the tenant's request. Therefore, cases withheld from the jury, where the evidence showed that the landlord had actually made a reasonable inspection and had not discovered the alleged defect, do not aid the defendants. See *Jackson* v. *First National Bank*, 415 Ill. 453, 114 N.E.2d 721, 726 (1953); *Revell* v. *Deegan*, 192 Va. 428, 65 S.E.2d 543, 546, 26 A.L.R.2d 462 (1951).

Defendants also argue that even if the railing were defective, it was not so defective that a landlord, acting reasonably, would have been put on notice that an inspection was appropriate.

The true test of negligence is what would a careful and prudent person have done under like circumstances, acting on his judgment then, and not on a judgment based on subsequent reflection. *Garafano* v. *Neshobe Beach Club, Inc., supra,* 126 Vt. at 573.

> The opportunity for knowledge, when available by the exercise of reasonable care, is the equivalent of knowledge itself. The question is not only whether the defendants knew of the danger but also whether they should have known of the defect in the exercise of reasonable prudence. *Cameron* v. *Abatiell, supra,* 127 Vt. at 118.

It is significant that the plaintiff, or her husband, without an express agreement to the contrary, had no authority to do any repair work to the porch, steps or handrail all of which was a part of the building owned by the defendants. The plaintiff testified that the back entrance was "all old wood" and the porch floor "dipped a little with weight on it." The plaintiff's concern about the sufficiency of the back entrance was demonstrated by her request that the defendant inspect it. The subsequent collapse of the railing substantiated her reason for the request, a precautionary measure which defendant neglected to take. This raised the question of whether reasonable care required an inspection and was exercised under all of the circumstances of the case. It was for the jury to say whether the defendants acted carefully and in the exercise of reasonable prudence. *Cameron* v. *Abatiell, supra,* 127 Vt. at 118.

"[V]oluntary ignorance affords no protection from legal liability." *Largess* v. *Tatem,* 130 Vt. 271, 276, 291 A.2d 398 (1972). If a landlord is required to be cognizant of possible accumulations of ice and snow in the short run caused by the "ordinary experience of the Vermont winter climate," *Smith* v. *Monmaney & Speno,* 127 Vt. 585, 588, 255 A.2d 674 (1969), he should also recognize long-range problems. "In considering

30

the question of the exercise of care, the natural tendency of wood to decay must be taken into account." *Williams* v. *Dickson,* 122 Minn. 49, 141 N.W. 849 (1913). See also *Stupka* v. *Scheidel,* 244 Iowa 442, 56 N.W.2d 874, 878 (1953); *Graeber* v. *Anderson,* 237 Minn. 20, 53 N.W.2d 646 (1952); Annot., 26 A.L.R.2d 468, 504–05 (1952).

In *Graeber* v. *Anderson, supra,* the tenant closed a door at the top of a stairway, the doorknob came off in her hand, and she fell down the stairs. The doorknob assembly was old and oft used. The court there held "[f]or a knob assembly located as this one was, . . . periodic inspections [by the landlord] were required." *Id.*

The directed verdict granted at the close of plaintiff's case was error.

*Reversed and remanded.*