James P. DOYLE, Appellee-Cross Appellant,

v.

EXXON CORPORATION, Appellant-Cross Appellee.

Nos. 1010, 1012, Dockets 77–7588, 7604.

United States Court of Appeals, Second Circuit.

Argued June 23, 1978.

Decided Jan. 10, 1979.

Kirk Y. Griffin, Geline W. Williams (Griffin & Higgins, Boston, Mass.), John B. Dunne, Norwich, Vt. (Dunne & Hershenson, Norwich, Vt.), for appellee-cross appellant.

Robert H. Erdmann, Burlington, Vt. (Dinse, Allen & Erdmann, Burlington, Vt.), for appellant-cross appellee.

Before VAN GRAAFEILAND, Circuit Judge, and ZAMPANO, Senior District Judge.*†

ZAMPANO, District Judge:

This case originated in the United States District Court for the District of Vermont with a suit by James Doyle against the Exxon Corporation for injuries he sustained during the course of an armed robbery which was the alleged result of Exxon's failure to install an "exact-cash" or "cash-safe" system at Doyle's place of employment.[1]

The jury rendered a verdict finding Exxon 70 percent negligent and the plaintiff 30 percent negligent. Exxon now appeals from the denial of its motion for a directed verdict at the close of the plaintiff's case, and from the trial court's refusal to instruct the jury on the doctrine of assumption of risk. The plaintiff, in turn, cross appeals on the ground that the trial court erred in allowing the jury to consider the issue of comparative contributory negligence.

For the reasons below, we affirm.

## I

In 1973, plaintiff's employer, Kevin Christie, entered into a leasehold operation

---

* Of the United States District Court, District of Connecticut, sitting by designation.

† This appeal was submitted to a two-member panel by agreement of the parties.

1. This system is provided, upon request, by Exxon to all its lessees. The system includes a small, locked safe which is bolted into the floor of the service station, plus two large signs prominently displayed at entryways alerting customers that the attendant is carrying no cash, that he has no key to the safe, and that exact cash or credit cards are required for all purchases after dark.

of an Exxon-owned service station in Quechee, Vermont. During the course of training sessions conducted by Exxon representatives, Christie was informed that the company would provide a cash-safe system free of charge to any station manager who requested it. It was uncontroverted that Exxon offered the system to its lessees as a proven crime deterrent.

On May 29, 1973, Christie applied in writing for Exxon to install a cash-safe system in his station. Mr. Donald Boudah, Exxon's local representative, promptly forwarded the request to the company after adding a notation that the "station [is] located in [a] highly rural area in Quechee, Vermont. Because of its rural location just off an interstate, it is very vulnerable to robbery." Despite the fact that Exxon usually automatically processed such requests, the system did not arrive until late summer. In the meantime, Christie on numerous occasions during the months of June and July orally urged Boudah to discharge the company's obligation to install the safe.

On the evening of July 31, 1973, Doyle, then age 17, was working alone at the station and as he was preparing to close for the night, he was confronted by a man brandishing a shotgun. After Doyle surrendered $400 of the day's receipts to the gunman, he was ordered to go into a storage room where he was shot and stabbed. Fortunately, Doyle survived the ordeal and thereafter an action in tort was instituted against Exxon charging it with negligence due to its failure to provide the cash-safe system in a timely manner. The jury awarded Doyle the sum of $51,000 in damages, which amount was reduced by the jury to $35,700 as a result of its finding that Doyle was 30 percent contributorily negligent.

## II

At the conclusion of the plaintiff's case, Exxon moved for a directed verdict on several grounds, the first of which was that the plaintiff had failed to prove that Exxon owed a duty to protect Doyle against the criminal activities of third parties.[2]

Under Vermont law, as in most states, a landlord is not an insurer of the safety of a tenant; rather, the duty of a landlord has been characterized as one of reasonable diligence and ordinary care to maintain, in a reasonably safe condition, areas of the premises over which he has control. E. g., *Waite v. Brown,* 132 Vt. 20, 312 A.2d 915 (1973); *Beck v. Dutra,* 129 Vt. 615, 285 A.2d 732 (1971); *Smith v. Monmaney,* 127 Vt. 585, 255 A.2d 674 (1969). While no appellate case in Vermont to our knowledge discusses the responsibility of a landlord to provide a tenant with security measures against criminal acts, there is an increasing trend in the law in other jurisdictions imposing liability upon a lessor for the failure under special circumstances to provide reasonable security measures to protect a lessee from the criminal activities of third persons. See generally Annot., 43 A.L.R.3d 331 (1972).

The special circumstances necessary to impose the duty were generally not grounded upon the mere relationship of the parties as in other areas of the law, i. e., common-carrier-passenger; innkeeper-guest, business invitor-invitee. See e. g., *Kline v. 1500 Massachusetts Avenue Apartment Corp.,* 141 U.S.App.D.C. 370, 375 nn. 11 & 14, 439 F.2d 477, 482 nn. 11 & 14 (1970); see also Restatement (Second) Torts § 314A. Where liability has been found, it appears the courts have weighed in the balance critical factors applicable to the general principles of negligence in the landlord-tenant relationship: the degree of control possessed by the landlord, the foreseeability of the danger, the extent to which the landlord had undertaken specific protective

2. In determining whether the motion for a directed verdict was properly denied, this court must "view the evidence in the light most favorable to [Doyle] and give [him] the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, 82 S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962); see also *Fortunato v. Ford Motor Company,* 464 F.2d 962, 965 (2 Cir. 1972); *Beck v. Dutra,* 129 Vt. 615, 285 A.2d 732, 734 (1971).

measures, and the adequacy of the evidence supporting the essential element of proximate causation. E. g., *Kline, supra, Morgan v. Bucks Assoc.,* 428 F.Supp. 546 (E.D. Pa.1977); *Spar v. Obwoya,* 369 A.2d 173 (D.C.App.1977); *Ramsay v. Morrissette,* 252 A.2d 509 (D.C.App.1969); *Stribling v. Chicago Housing Authority,* 34 Ill.App.3d 551, 340 N.E.2d 47 (1975); *Sampson v. Saginaw Professional Building, Inc.,* 393 Mich. 393, 224 N.W.2d 843 (1975); *Braitman v. Overlook Terrace Corp.,* 68 N.J. 368, 346 A.2d 76 (1975); *Sherman v. Concourse Realty Corp.,* 47 A.D.2d 134, 365 N.Y.S.2d 239 (1975). Absent these factors, other courts have found that no duty exists. E. g., *Martin v. Usher,* 55 Ill.App.3d 409, 13 Ill.Dec. 374, 371 N.E.2d 69 (1977); *Scott v. Watson,* 278 Md. 160, 359 A.2d 548 (Ct.App.1976); *Goldberg v. Housing Authority of Newark,* 38 N.J. 578, 186 A.2d 291 (1962); *Czech v. Aspen Industrial Center,* 145 N.J.Super, 597, 368 A.2d 938 (App.Div.1976); *Daniels v. Shell Oil Co.,* 485 S.W.2d 948 (Tex.Civ.App.1972); *Gulf Reston, Inc. v. Rogers,* 215 Va. 155, 207 S.E.2d 841 (1974).

In the instant case, we believe the plaintiff's quantum of proof was minimally sufficient to sustain the trial court's decision to allow the case to go to the jury on the question of the duty of care. The record discloses that Exxon, by an express agreement apart from the lease between it and Christie, reserved the right to enter the station to make certain repairs, including those to the furnace, fuel pumps, and windows. As stated in *Panaroni v. Johnson,* 158 Conn. 92, 99, 256 A.2d 246, 252 (1969), quoted with approval in *Waite v. Brown, supra,* "[t]he making of repairs by the landlord, in and of itself, may denote a retention of control or may be an indicia of limited, temporary or full control." In addition, the agreement required Exxon to supply and install a cash-safe system on the premises, an obligation which reasonably led its tenant to expect and to rely upon that degree of protection from robbery.

Moreover, the lease contained several provisions which would be sufficient to justify a finding by the jury that Exxon continued in limited control and possession of the premises during the time in question here. Under the lease, all additions, improvements, and alterations to the station were within the exclusive control of Exxon and, further, Exxon reserved the right, upon written notice, "to reconstruct, remodel or modify the building or other facilities covered thereby . . . ." In *Smith v. Monmaney, supra,* one of the defendants, Speno, deeded the premises to defendant Monmaney the day before the plaintiff suffered injuries as a result of a fall on steps leading into the building. At the close of plaintiff's evidence, the trial court granted Speno's motion for a directed verdict on the ground that Speno was not in possession or control of the premises at the time of the accident. The Supreme Court of Vermont reversed, stating that Speno's promise to the plaintiff to provide handrailing prior to the accident and his going on the premises after the accident to "reduce the danger" presented a factual question for the jury on the issue of possession or control. Cf. *Hoar v. Sherburne Corp.,* 327 F.Supp. 570, 571 n. 1 (D.Vt.1971), aff'd 456 F.2d 1269 (2 Cir. 1972). In the case sub judice, the delivery and installation of the cash-safe system as a security device were singularly under the direction and control of Exxon, and it in fact did ultimately fulfill its obligation after the robbery.

Exxon next contends that even assuming the existence of a duty, there was neither a breach of that duty nor proximate causation as a matter of law, and therefore the trial court erred in submitting those issues to the jury. We disagree. While it is true the plaintiff was unable to prove a precise date on or before which Exxon was to execute its promise, what constituted a reasonable time for performance became a question of fact properly left to the jury to determine under the particular circumstances of this case. Cf. *Schmidt v. McKay,* 555 F.2d 30, 35 (2 Cir. 1977); *Seaboard Coast Line R. Co. v. Long Island R.R. Co.,* 447 F.Supp. 108, 114 (E.D.N.Y.1978); *Hayden v. Hoadley,* 94 Vt. 345, 111 A. 343 (1920); 1 Corbin, Contracts § 96 (1960). Christie testified that he repeatedly com-

plained to Boudah about Exxon's neglect prior to the incident. Time and time again he was assured that the device would be delivered and installed. From this evidence, the jury could reasonably infer that the two-month delay between the request for the system and the robbery was a breach of duty. Cf. *Hoar v. Sherburne Corporation, supra,* 327 F.Supp. at 571. It should also be noted that the defendant introduced no evidence to show what, if any, measures were taken to effect delivery and installation of the system after it promised to do so. Since this information was peculiarly within the knowledge of Exxon, under Vermont law it was incumbent upon the defendant to proffer it because in the absence of such proof "the court in considering defendant's motion [for a directed verdict] could reasonably conclude or infer, that the defendant did less than its duty required to protect the plaintiff from the risk of injury . . . ." *Forcier v. Grand Union Stores, Inc.,* 128 Vt. 389, 394, 264 A.2d 796, 800 (1970); cf. *Capital Candy Co. v. Montpelier,* 127 Vt. 357, 359, 249 A.2d 644, 646 (1968).

■ With respect to proximate cause, Exxon argues that this essential element was lacking as a matter of law because the robber's criminal conduct was a superseding cause of the injuries to Doyle. However, in situations where the intervening negligence of a third party is a factor, the principles to be applied are succinctly stated in *Paton v. Sawyer,* 134 Vt. 598, 601, 370 A.2d 215, 217 (1977):

> Whether or not the negligence of a third person may or may not amount to such an intervening cause turns on the issue of whether or not some such negligent act or intervention was something the original actor had a duty to anticipate. If he was bound to foresee such intervention as a consequence of his own negligence, he cannot take refuge behind the doctrine of intervening cause.

See also *Meyette v. Canadian Pacific Railway Co.,* 110 Vt. 345, 6 A.2d 33 (1939).

The foreseeability requirement has also been adopted by the Restatement of Torts (Second) § 448 (1965) in the context of an intervening criminal act of another:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

In the light of these authorities, the district court correctly ruled that the plaintiff's evidence was sufficient to sustain a prima facie case. Christie informed Exxon's representatives that the cash-safe system was necessary because of the danger of robbery due to his station's rural location, late operating hours, and proximity to Interstate Highway 89. Exxon's local agent recognized the potential peril and promptly ordered the delivery and installation of the system because the station was "very vulnerable to robbery." Albert Connors, an Exxon instructor, testified that studies revealed that the system effectively reduced the incidents of robberies and assaults upon station employees even in high crime areas. The system's deterrent effect was so highly respected by Exxon that all of the managers of Exxon-owned stations were required to use the system or face immediate dismissal. Thus, under these circumstances, a jury could logically conclude that the criminal events at Christie's station on the night in question resulted, at least in part, from Exxon's failure to install in a timely fashion a system designed to prevent the very wrong that occurred, even though a contrary conclusion could rationally be based on the same evidence. Cf. *Lillie v. Thompson,* 332 U.S. 459, 461–62, 68 S.Ct. 140, 92 L.Ed. 73 (1947); *Forcier v. Grand Union Stores, Inc., supra; Dodge v. McArthur,* 126 Vt. 81, 84, 223 A.2d 453, 455 (1966); *Wright v. Shedd,* 122 Vt. 475, 477, 177 A.2d 240, 243 (1962).

### III

■ Exxon's final contention is that the district court erred in refusing to instruct the jury on the defense of assumption of risk. However, our review of the record indicates that the court submitted in somewhat different form all of the requested elements of the defense under the rubric of the recently enacted Vermont doctrine of comparative negligence. 12 V.S.A. § 1036. In any event, the doctrine of assumption of risk would not be applicable under the facts of this case. In Vermont, the doctrine has no application unless the plaintiff "[has] knowledge of the existence of the risk, together with an appreciation of the extent of the danger." *Johnson v. Fisher,* 131 Vt. 382, 385, 306 A.2d 696, 698 (1973). Here, the district court found that while Doyle was generally aware of the possibility of a robbery at the station, the defendant failed to sustain its burden of proof that Doyle encountered the risk freely with full appreciation of the nature and extent of the danger. Cf. *Garafano v. Neshobe Club,* 126 Vt. 566, 574, 238 A.2d 70, 76 (1967). Our examination of the trial record confirms the district court's ruling.

We further find the issue controlled by the principles enunciated in *Beck v. Dutra, supra.* In that case, the plaintiff charged her landlords with a negligent failure to install a handrail on a stairway leading to her apartment. The trial judge refused to charge on the doctrine of assumption of risk even though the plaintiff knew of the defective condition, complained of the lack of handrail to the landlords, and realized she might be injured if she used the steps. The Vermont Supreme Court affirmed the ruling stating: "The plaintiff had no other choice but to use the stairs provided by the [defendants]. It was a necessitous action on her part and not a deliberate act involving a voluntary choice within the meaning of the doctrine." See also *Frost v. Tisbert,* 376 A.2d 748 (Vt.Sup.Ct.1977); *Johnson v. Fisher, supra.*

### IV

■ On the cross appeal, we reject plaintiff's claim that the instruction on comparative negligence was erroneously submitted to the jury. The jury could reasonably take into account Doyle's admitted violation of his employer's instructions not to have large sums of money exposed within view of his customers which, as the district court noted, might serve to "invite a theft."

Accordingly, the judgment of the district court is affirmed.

VAN GRAAFEILAND, Circuit Judge, concurring:

Plaintiff sued as the third party beneficiary of defendant's promise to provide a cash-safe system, which promise, plaintiff alleges, was secured for the benefit of him and his fellow employees. I concur in the affirmance herein on that theory alone.