# Raymond Lattrell v. Winston Swain and Isabelle A. Swain

[ 239 A.2d 195 ]

December Term, 1967

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed February 6, 1968

34

*Conley & Foote* for the plaintiff.

*Wick, Dinse & Allen* for the defendants.

**Keyser, J.** The jury by their verdict found the defendants not guilty of negligence and the plaintiff appealed. The assignments of error are: (1) denial of the court to excuse three proposed jurors for cause; (2) failure of the court to make written findings in denying plaintiff's motion for judgment notwithstanding the verdict and other motions; and (3) denial of plaintiff's motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial.

One of the principal facets of plaintiff's questioning of the jurors on *voir dire* related to their present and past connection with farming. The jurors were informed that the evidence would establish that the defendants owned a farm in New Haven, Vermont, and that plaintiff also owned a farm but was then engaged in another occupation of driving truck and delivering hay.

The jurors who signified a present or past connection with farming were asked whether because of that fact their judgment would be "either consciously or unconsciously" prejudiced in favor of the defendants. One juror, Mrs. Brown, answered: "It might be in connection with a truck—we have a truck now." A second juror, Mrs. North, apparently raised her hand which brought this response by plaintiff's attorney: "Mrs. North, you think it would? I thank you very much." The record is not clear as to a third juror, Mr. Stacy. It shows the following: Q. "Mr. Stacy, you think it would?" A. "I do now (sic)." Q. "Thank you, sir. I take it you do not think so, * * *." The plaintiff then asked the court to excuse these three jurors for cause. The request was denied with exceptions. The drawing of the jury then continued. Thereafter the plaintiff removed the three jurors in question from the jury by peremptory challenges. He also in like manner challenged one other juror who was not sure that she would be prejudiced.

Six other jurors were called to replace the four challenged jurors and two challenged by the defendants. Then, after the plaintiff and the defendant each stated that they were "content," the court impaneled the jury. The plaintiff at that time had exhausted only four of the six peremptory challenges granted him by 12 V.S.A. §1941.

The plaintiff claims all three of the jurors in question were disqualified by bias or prejudice. In considering this question we accept solely for the purposes of this opinion the proposition that the court erroneously denied plaintiff's challenges.

The mere fact that several of the jurors had a past or present connection with farming does not, *per se,* cast suspicion of sympathy, bias or prejudice upon them because the verdict went against the plaintiff. This appears to be his contention. The record shows no juror on the impaneled jury with a farming background stated on *voir dire* examination that he or she would be influenced or prejudiced in the trial by that fact.

Jury competence is an individual rather than a group or class matter. That fact lies at the very heart of the jury system. The competency of a juror will be presumed until the contrary is shown, and the burden is upon the challenging party to establish the disqualification of the juror. *Garvey* v. *Michaud,* 108 Vt. 226, 235, 184 A. 712.

The plaintiff has the burden of showing he has been prejudiced by a ruling of the trial court. Error works a reversal only when the record satisfies the court that the rights of the excepting party have been injuriously affected. Supreme Court Rule 9; *Parker* v. *Hoefer,* 118 Vt. 1, 10, 11, 100 A.2d 434, 38 A.L.R.2d 1216. The record does not so satisfy us.

The American tradition of trial by jury contemplates that litigants are entitled to have their cases tried by fair-minded, impartial jurors. It is an inseparable and inalienable part of the right to a trial by jury and is guaranteed by the Constitution. If the examination of a juror clearly exposes a state of mind evincing a fixed opinion, bias, or prejudice such juror is properly subject to challenge for cause. *State* v. *Clark,* 42 Vt. 629, 634 (opinion); *Kujawa* v. *Baltimore Transit Co.,* 224 Md. 195, 167 A.2d 96, 89 A.L.R.2d 1166.

To begin with, in the instant case the plaintiff cannot complain of error in the overruling of his challenges for cause since it did not force him to exhaust his peremptory challenges. *Mellinger* v. *Prudential Ins. Co.,* 322 Mich. 596, 34 N.W.2d 450, 455; *Hammond* v. *Peden,* 224 Ark. 1053, 278 S.W.2d 96, 98; *State* v. *Hoyt,* 47 Conn. 518, 519; *Spies* v. *People,* 122 Ill. 1, 12 N.E. 865, 17 N.E. 898, app. dismd. 123 U.S. 131, 8 S.Ct. 22, 31 L.Ed. 80, 87; 31 Am.Jur., Jury, §155; 50 C.J.S. Juries §256.

The right to challenge is a right of rejection, not one of selection of a juror. *Hayes* v. *State of Missouri,* 120 U.S. 68, 71, 7

S.Ct. 350, 30 L.Ed. 578, 580. Here, the plaintiff did exercise his right of peremptory challenge to remove the three jurors whom he challenged for cause. In this situation the plaintiff, having peremptory challenges remaining unexhausted, waived the alleged error committed by the trial court in previously ruling adversely on his challenge of such jurors for cause. *State* v. *Albano,* 119 Me. 472, 111 A. 753; *Burch* v. *Southern P. Co.,* 32 Nev. 75, 104 P. 225, 229; *State* v. *Braden,* 56 Ohio App. 19, 9 N.E.2d 999, 1001; 31 Am.Jur., Jury, §155; 50 C.J.S. Juries §256. The great weight of authority supports the foregoing rule. *State* v. *Albano, supra.* And there is no reason why it should not apply in civil as well as in criminal cases, *Hammond* v. *Peden, supra.*

 The jury was impaneled after each party had expressed satisfaction with the jurors as drawn. Once the jury is impaneled, the law presumes every juror sitting on the case is indifferent and above legal exception. Otherwise he would have been challenged either for cause or peremptorily if such latter challenges remained unexhausted. This presumption places a duty on a party to show that he is harmed by the jury as finally impaneled.

In 1884 the case of *State* v. *Gaffney & Fields,* 56 Vt. 451 came to this court. The court held at page 453 that the respondent Field "was not injured by the refusal of his challenge for cause, as he peremptorily challenged the juror and had challenges left when the panel was filled." Cf. *State* v. *Kamuda,* 98 Vt. 466, 129 A. 306. See also: *Hopt* v. *Utah,* 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708, 710; *State* v. *Hooper,* 140 Kan. 481, 37 P.2d 52, 64; *People* v. *Barker,* 60 Mich. 277, 27 N.W. 539, 542; *State* v. *Sultan,* 142 N.C. 569, 54 S.E. 841, 843.

So far the record shows a competent jury was obtained without the plaintiff exhausting his peremptory challenges. The record does not disclose any evidence in the answers given on *voir dire* by the twelve jurors finally chosen to sit on the panel which indicates any basis for their disqualification to serve on the case. The plaintiff has not demonstrated how or in what manner he was prevented from having a fair trial. We are confronted with the fact that each party was content with the jury as drawn. And the record fails to show any valid exception to the contrary. No juror sat on the trial to whom the plaintiff offered any objection. It is not perceived how the plain-

tiff was injured, or in any manner prejudiced, by being compelled to challenge the jurors peremptorily. A complete answer to plaintiff's exception to the court's ruling, if wrong, is that he was not harmed. *State* v. *Gaffney & Fields, supra,* clearly stands for this proposition.

█ The plaintiff next urges the trial court erred ·in failing to make written findings upon denying his motions for judgment notwithstanding the verdict and for a new trial as to damages. He cites 12 V.S.A. §2385 in support of his contention. The denial of these motions was interlocutory in nature since the ruling was made before and preliminary to the final judgment order. Since the ruling was not final, it was not separately appealable apart from the judgment itself. The requirement for findings of fact, prescribed by 12 V.S.A. §2385, applies principally to the final orders and decrees from which an appeal is allowed as a matter of right. In this sense, the ruling was not "appealable" within the requirement of this section of the statutes.

The plaintiff relies upon *Beal* v. *Ready,* 126 Vt. 127, 223 A.2d 820 in support of his claim. That case was a court proceeding on a petition to have a default judgment set aside on the ground of fraud, accident or mistake under 12 V.S.A. §2353. Findings were required on the issues involved. It is only where there is a ruling on an issue of fact for the court to resolve that findings are required. The instant case involved a ruling of law, not a choice of facts on the evidence as in the *Beal* case. The exception is without merit.

█ The plaintiff next urges the court erred in denying his motions for a directed verdict and for judgment notwithstanding the verdict. These motions are briefed and considered together as they raise but one issue. The question is one of law and in deciding it we view the evidence in the light most favorable to the defendants excluding modifying evidence.

█ Although the plaintiff contends there was no disputed question of fact and no conflict in the evidence the record does not sustain his claim.

On March 8, 1963, the parties resided in the adjoining towns of Addison and New Haven in Addison County. On that date the plaintiff on orders of his employer drove his employer's truck from Addison to Keesville, New York, to pick up a load of baled hay and deliver it to the defendants' farm. Plaintiff left for Keesville about 8:15 A.M.,

and arrived at defendants' farm about 4 P.M. This was the fourth time plaintiff had delivered hay to the defendants' farm that winter.

The plaintiff drove the truck up parallel to the barn and about 2 feet from it. This brought the truck under the eaves. The plaintiff chose the location and method of unloading himself. The defendants gave no instructions or directions as to when the hay was to be delivered, where to put it or how it was to be unloaded. There was a large barn door on the side of the barn but the plaintiff was unloading the hay through a window hole about 3 feet square adjacent to the big door. The defendants were not home when the hay truck arrived but when they came the plaintiff was working on the hay. The plaintiff was given no warning about the snow on the roof or about snow sliding off.

After placing the truck in position the plaintiff climbed up onto the top of the load, some 11-12 feet above the ground, and started unloading the bales. The distance from the ground to the edge of the eaves was 14 feet. Plaintiff worked about one-half hour having nearly one-half of the hay unloaded when snow slid off the barn roof. Some of the snow fell onto the truck where plaintiff was working and he landed on the ground. Plaintiff's injury was mostly to his right foot. He told Dr. Simpson at the hospital that he had "partially slipped or jumped from a load on a wagon landing on his heel."

While standing on top of the truck load of hay the plaintiff's head was well above the eaves of the barn. He was then "in position where he could see this roof." He realized it was covered with snow but "hadn't notice it" (the roof), "didn't pay any attention" to it and didn't know "what kind of a roof it was." Plaintiff had been a carpenter and farmer for many years and had a metal roof on his own barn. It is common knowledge among carpenters and farmers that snow is more apt to slide off metal barn roofs. This was the way snow got off the roof on both the plaintiff's and defendants' barns.

The weather on that day was mild and comparatively warm. There is no evidence to show that the defendants did anything to cause the snow to fall off the roof. While the cause does not affirmatively appear in evidence, the plaintiff infers it resulted from the warm weather that day. He argues he could not know it was warm and sunny in the New Haven area because it was cold and overcast in the locality where he spent most of the day.

40

The statement of the evidence and the inferences to be drawn from it indicates that the issue of actionable negligence on the part of the defendants was for the jury. It was for them to say whether the defendants had violated any duty owed to the plaintiff or had negligently permitted any hazard or any condition to exist which was the sole proximate cause of the plaintiff's injury. The facts recited are sufficient to sustain a finding that the defendants had no knowledge superior to that of the plaintiff or which plaintiff ought to have had if acting as a prudent man would have acted under like circumstances.

There was sufficient evidence in the case of such facts and circumstances which warranted the denial of plaintiff's motions for a directed verdict and judgment notwithstanding the verdict.

Plaintiff argues a hidden danger existed and as a business invitee he should have been warned of it since the defendants knew about it and it was not apparent to him. There is substantial evidence to support the conclusion that the condition was obvious to the plaintiff. His view was open and unobstructed. His position was very close to the barn roof and the eaves and he had stood partially above the eaves when he began unloading the hay. This made a survey of his situation and the existing conditions readily perceptible to him. Whether or not this was the fact was for the jury to decide and not one of law for the court.

 The defendants pleaded contributory negligence which also raised questions of fact. Whether under the circumstances the exercise of due care required plaintiff to observe and examine the roof and snow conditions and determine whether he should avoid parking his truck under the eaves was something for the jury to determine. *Rheaume* v. *Goodro,* 113 Vt. 370, 373, 34 A.2d 315. "Where a defect or danger is patent or obvious it is contributory negligence to fail to exercise ordinary care to avoid it." *Wall* v. *A. N. Derringer, Inc.,* 119 Vt. 36, 38, 117 A.2d 390, 391, 65 A.L.R.2d 467.

 The evidence also made a question for the jury on defendants' plea of assumption of the risk. If the jury determined that the plaintiff voluntarily, that is, by the exercise of free will and intelligent choice, put himself in the way of the danger which he knew and comprehended, or was so obvious that he must be taken to have known and comprehended it, the defendants were entitled to their verdict on

this ground, otherwise not. *Berry* v. *Whitney & Whitney,* 125 Vt. 383, 385, 387, 217 A.2d 41.

Plaintiff also claims the court abused its discretion in refusing to set aside the verdict. He argues the verdict was clearly against the weight of the evidence and taken together with the questions raised during *voir dire* shows the verdict was the result of bias, passion and prejudice. He asks this court to set aside the verdict to correct the injustice done by the trial court. This has been our practice when the circumstances warrant it. *DeGoesbriand Memorial Hospital* v. *Town of Alburg,* 122 Vt. 275, 283, 169 A.2d 360.

Our search of the record discloses nothing which would require the verdict to be set aside on this ground or because of the other errors claimed by the plaintiff.

There has been no showing that the trial court abused its discretion in ruling on the plaintiff's motion to set aside the verdict and award a new trial or exercised it for inappropriate or improper reasons. *Dashnow* v. *Myers,* 121 Vt. 273, 283, 155 A.2d 859. In such circumstances we are bound to uphold the ruling of the trial court. *Grow* v. *Wolcott,* 123 Vt. 490, 496, 194 A.2d 403.

*Judgment affirmed.*