# State of Vermont v. George Joseph Hohman

[420 A.2d 852]

No. 32-79

Present: **Barney, C.J., Daley, Larrow, Billings and Hill, JJ.**

Opinion Filed July 24, 1980

Motion for Reargument Denied August 6, 1980

M. *Jerome Diamond,* Attorney General, *Richard A. Unger,* Assistant Attorney General, Montpelier, and *Raymond G. Bolton,* Bennington County State's Attorney, Bennington, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, Montpelier, and *Welch and Graham,* White River Junction, for Defendant.

**Daley, J.** The defendant was originally charged with murder in the first degree for the killing of a young girl by strangulation. After a change of venue from Bennington to Addison Superior Court, a jury found the defendant guilty of murder in the second degree. 13 V.S.A. § 2301. On appeal to this Court, the conviction was reversed. *State* v. *Hohman,* 136 Vt. 341, 392 A.2d 935 (1978). Upon remand, the defendant moved for change of venue from Addison County. The motion was granted, and defendant was retried many miles from Bennington and Addison Counties in the Washington Superior Court upon a charge of murder in the second degree. The jury found him guilty of the lesser included offense of manslaughter. See 13 V.S.A. § 2310. In both trials, the State was represented by the state's attorney of Bennington County and the office of the Attorney General.

On appeal, defendant raises four claims of error. First, he claims that the trial court erred in failing to disqualify the state's attorney for alleged unethical pretrial conduct. Second, defendant claims error in the trial court's denial of his challenges to two jurors for cause. Third, defendant claims it was error not to allow him to absent himself from his trial. Finally, defendant objects to the failure of the trial court to grant him a bifurcated trial. We examine these claims in this order.

Shortly after the 1978 remand of this case, the state's attor-

ney found himself in a battle for re-election. On November 6, 1978, he ran a large campaign advertisement in the Bennington Banner, a newspaper which circulates in both Bennington and Rutland Counties. The advertisement featured a photograph of the state's attorney, accompanied by the following message:

In 1976 I prosecuted State v. George Hohman and he was convicted of murder. The conviction was overturned because the judge allowed evidence to be improperly admitted, not because of prosecutorial misconduct. In 1978 I asked that the Court set bail at $75,000, however bail was set at $30,000.

I believe that the bail laws of this State should be changed to reflect a defendant's danger to the community. The Hohman case is the most important case pending. My opponent is disqualified from prosecuting George Hohman. If I am re-elected, I will vigorously prosecute Hohman and obtain a second conviction. Your support would be appreciated, Tuesday, November 7th.

Defendant promptly filed a motion to disqualify the state's attorney from prosecuting him. In it he asked the trial court, as he now asks us on appeal, to hold as a matter of law that the advertisement per se evinces such personal bias on the part of the state's attorney as to require reversal. The trial court denied this motion, stating that "[n]o credible evidence has been introduced to establish that Mr. Bolton is biased or prejudiced to the point that defendant would be deprived of his constitutional right to a fair and impartial trial."

We strongly condemn the conduct of the state's attorney in this case. The awesome power to prosecute ought never to be manipulated for personal or political profit.

The [state's attorney] is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or

innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger* v. *United States,* 295 U.S. 78, 88 (1935); see *State* v. *Goshea,* 137 Vt. 69, 76, 398 A.2d 289, 293–94 (1979); *State* v. *Lapham,* 135 Vt. 393, 406, 377 A.2d 249, 257 (1977); *State* v. *Slack,* 69 Vt. 486, 491, 38 A. 311, 312 (1897); *State* v. *Magoon,* 50 Vt. 333, 340 (1877); 12 V.S.A. App. IX, Code of Professional Responsibility, E.C. 7-13; American Bar Association, *Standards Relating to the Prosecution Function* §§ 1.1, 1.3 & commentary (Approved Draft 1978). For these reasons, it was error for the state's attorney to fail to disqualify himself, and it was error for the trial court to deny the motion to disqualify the state's attorney. Furthermore, because serious questions exist as to the ethical propriety of the state's attorney's conduct, we will refer this matter to the Professional Conduct Board.* See 12 V.S.A. App. IX, *supra,* D.R. 7-107.

■■ As a general principle, error does not require reversal unless it is prejudicial to the defendant. See, e.g., *State* v. *Lupien,* 135 Vt. 30, 33, 370 A.2d 196, 198 (1977); *State* v. *Rushford,* 130 Vt. 504, 508–09, 296 A.2d 472, 475 (1972). While it is true, as defendant argues, that some courts have chosen to make prosecutorial bias per se reversible error as a matter of public policy, see *Sinclair* v. *State,* 278 Md. 243, 255 n.8, 363 A.2d 468, 475 n.8 (1976), we are inclined to join those courts that have required some prejudice. See *United States* v. *Stanford,* 589 F.2d 285, 299 (7th Cir. 1978), *cert. denied,* 440 U.S. 983 (1979); *United States* v. *Milanovich,* 303 F.2d 626, 630 (4th Cir.), *cert. denied,* 371 U.S. 876 (1962); *People* v. *District Court,* 189 Colo. 159, 162–63, 538 P.2d 887, 888–89 (1975) (en banc); *State* v. *Harris,* 477 S.W.2d 42, 45 (Mo. 1972). Unethical conduct, however worthy of censure, does not necessarily deprive a defendant of a fair trial, and is therefore distinguishable from prejudicial error. *United States*

---

* At the time of publication in the official reports, this matter had already received the attention of the Professional Conduct Board.

v. *Stanford, supra,* 589 F.2d at 299–300; *United States* v. *Milanovich, supra; People* v. *Pearson,* 404 Mich. 698, 725, 273 N.W.2d 856, 864 (1979). For this reason, we have previously stated that, "aside from our particular interest in professional conduct, we must also adjudicate between the interests of the people of the State of Vermont and those of the respondent." *State* v. *Jackson,* 127 Vt. 237, 238, 246 A.2d 829, 830 (1968). This latter duty requires a determination of the prejudice to the defendant under the particular circumstances of the case at hand. *State* v. *Lawrence,* 137 Vt. 597, 601, 409 A.2d 997, 1000 (1979); *State* v. *Jackson, supra.*

In light of the state's attorney's attitude as demonstrated by his campaign advertisement, it is clear that the defendant was prejudiced at the plea bargaining stage of these proceedings. Had defendant been convicted of second degree murder, the offense charged, we would be required to reverse the conviction. Because the jury convicted the defendant of the lesser included offense of manslaughter, however, reversal is not warranted. On this record, as a practical matter, it is apparent that defendant could not have negotiated a plea bargain to an offense lower than manslaughter. Therefore, the jury's verdict cured the prejudice that resulted from the state's attorney's attitude by giving the defendant the best result he could have attained through plea negotiations.

Beyond the pretrial stage, we have carefully examined the record, and we are unable to find any instance in which the bias of the prosecutor touched the trial itself. See *People* v. *McKay,* 191 Colo. 381, 384, 553 P.2d 380, 382 (1976) (en banc). The State's evidence showed that defendant's vehicle was seen in the area of the crime at the time in question. That night, defendant left a note for his wife in which he admitted the killing, and recognized the possible consequences of his act. Early the next morning, the defendant flagged down a police cruiser, and told the police officer that he had strangled a girl, and he didn't know why. Later, he gave the police detailed directions to where the body could be found. These admissions were introduced without objection or contradiction.[1] Defendant's directions led the police to the nude body of the victim,

---

[1] None of the statements ruled inadmissible in *State* v. *Hohman, supra,* were introduced.

which was found with abrasions on the neck and breasts, and partially covered by a wooden box. Uncontradicted expert medical testimony attributed death to strangulation, both manual and by ligature.

The sole issue controverted by the defendant was mental capacity. On this issue, the state's attorney presented the same expert witnesses that he had used in the first trial. The defendant makes no specific claim of prosecutorial overreaching at the trial, and the record discloses none. It is uncontradicted that none of the jurors were ever exposed to the state's attorney's campaign advertisement. The transcript reveals an uneventful trial.

In *Chapman* v. *California*, 386 U.S. 18 (1967), the United States Supreme Court held that, where a reviewing court can declare beyond a reasonable doubt that a prosecutor's improper comments did not affect the jury, an error of constitutional dimension will be held harmless. *Id.* at 23–26. The defendant in this case makes no constitutional claim on the bias issue, but a rule that overcomes constitutional error must, a fortiori, render nonconstitutional error harmless. Therefore, in light of the overwhelming evidence of guilt, we find beyond a reasonable doubt that disqualification of the prosecutor would have had no effect on the outcome of this trial. See, e.g., *State* v. *Howe*, 136 Vt. 53, 60, 386 A.2d 1125, 1129 (1978); *State* v. *Persuitti*, 133 Vt. 354, 358–60, 339 A.2d 750, 753–54 (1975); *Milton* v. *Wainwright*, 407 U.S. 371, 372–73 (1972); *Harrington* v. *California*, 395 U.S. 250, 254 (1969). Since the pretrial prejudice was cured by the verdict, and no further prejudice appears, the actions of the state's attorney do not require reversal.

▇▇ Defendant's next claim is that the trial court erred in denying challenges for cause directed against juror Smith and juror Senning. At the time that the challenge of juror Smith was made, defendant still had three peremptory challenges remaining, but he did not use one against this juror. We have recently held that, "[u]nless the challenging party has already exhausted all of its peremptory challenges, denial of a challenge for cause is preserved on appeal only if the challenging party peremptorily challenges the objectionable juror, and then or subsequently exhausts all peremptory chal-

lenges." *State* v. *Lawrence, supra,* 137 Vt. at 603, 409 A.2d at 1000. Therefore, to preserve an objection to the denial of his challenge to juror Smith, the defendant had to exhaust his peremptory challenges *and* peremptorily challenge juror Smith. Because he failed to do the latter, the fact that he subsequently exhausted his peremptory challenges is not enough to save his objection to juror Smith. However, because he had exhausted his peremptory challenges by the time his challenge to juror Senning was denied, his objection to juror Senning is preserved for appellate review. *Id.*

The voir dire of prospective jurors was conducted individually. Upon examination of juror Senning, the State elicited the fact that the juror had heard in one radio newscast that a prior verdict had been reversed because it was based on inadmissible evidence. The juror stated, however, that she had thought about whether she had formed an opinion, and decided that she had not, and that the radio report would not influence her in any way. Later, upon examination by defense counsel, the following colloquy occurred:

Q. And in . . . the radio report you heard that the first trial had been what?

A. I heard that the first trial, that the verdict had been overturned by a Judge, the Supreme Court, I believe, because there had been some evidence that he considered was not admissible evidence.

Q. And do you remember what happened—what that first verdict was that was overturned?

A. It was guilty, I think, but that's just my recollection. I don't remember. As I say, I'm pretty sure that's what it was.

Q. Do you remember reading about this case back at the time of the first trial?

A. No.

Q. What was the verdict, or what did you think it was?

A. I'm saying I think that the first trial was guilty.

Q. Of what?

A. I don't know.

Q. You're not sure what the charge was at that first trial?

A. No, I don't know what the charge was.

Q. This is a hard question that I'll pose to you, but the Court will tell you that every defendant is presumed to be innocent and you have an obligation, as you listen to the evidence and in the course of your talking about it with the other jurors, to give him the benefit of that. Do you really feel you can do that even though you've heard that radio report?

A. That's what I've thought about the past two days, and I think that I could do that.

Q. That's not going to affect how you consider the issue of sanity in particular?

A. No.

Q. All right. Okay. Let me ask you this: If you were on trial yourself and there were twelve jurors who were going to hear the evidence and they were in your frame of mind, they were coming at the case from your perspective, do you think you would be getting a really fair and impartial trial?

A. Yes, I do.

Immediately after this exchange, defendant challenged this juror for cause on the ground that knowledge of the prior conviction requires removal as a matter of law, regardless of the juror's assurances of impartiality. The State opposed the challenge on the ground that if the Court could determine, on the basis of its observations, that the juror could be fair, the challenge properly should be denied. The court denied the challenge, and this juror served on the panel.

 Certain grounds provided by statute disqualify a juror as a matter of law. 12 V.S.A. §§ 61, 64, 65. Many of the grounds stated in these statutes are merely specific enumerations of circumstances that give rise to an inference of bias. See, e.g., *id.* §§ 61(a), (f), 65. When, as here, these statutory grounds of per se disqualification for potential bias do not exist, the question becomes whether the juror entertains a fixed bias, or whether he can decide the case solely on the evidence. See, e.g., *State* v. *Holden*, 136 Vt. 158, 161, 385 A.2d 1092, 1094 (1978) ; *Lattrell* v. *Swain*, 127 Vt. 33, 36, 239 A.2d 195, 197 (1968); *State* v. *Meyer*, 58 Vt. 457, 461, 3 A. 195, 198 (1886), *overruled on other grounds, State* v. *Burpee*, 65 Vt. 1,

25 A. 964 (1892); *State* v. *Meaker,* 54 Vt. 112, 124–25 (1881); *Murphy* v. *Florida,* 421 U.S. 794, 800 (1975); *United States* v. *Giacalone,* 588 F.2d 1158, 1165 (6th Cir. 1978), *cert. denied,* 441 U.S. 944 (1979); *Klinck* v. *State,* 203 Ind. 647, 652, 179 N.E. 549, 551, 79 A.L.R. 272, 274 (1932). Once a fixed bias has been demonstrated, disqualification is required as a matter of law, see *State* v. *Holden, supra; State* v. *Parker,* 104 Vt. 494, 498, 162 A. 696, 698 (1932); *State* v. *Meaker, supra,* 54 Vt. at 125, but whether the juror entertains an opinion that is truly a fixed bias is a question for the sound discretion of the trial judge who has observed the demeanor of the juror on voir dire, e.g., *State* v. *Meaker, supra; State* v. *Meyer, supra,* 58 Vt. at 462, 3 A. at 198; *Irvin* v. *Dowd,* 366 U.S. 717, 723–24 (1961); *Strode* v. *State,* 257 Ark. 480, 482, 517 S.W.2d 954, 956 (1975); *Commonwealth* v. *Richard,* 384 N.E.2d 636, 638 (Mass. 1979); *State* v. *Jackson,* 43 N.J. 148, 160, 203 A.2d 1, 7 (1964), *cert. denied,* 379 U.S. 982 (1965); *State* v. *Patriarca,* 112 R.I. 14, 25, 308 A.2d 300, 309 (1973); Annot., 6 A.L.R.3d 519, 534 (1966). "The finding of the trial court upon the strength of the juryman's opinions and his partiality or impartiality ought not to be set aside by a reviewing court unless the error is manifest . . . ." *Holt* v. *United States,* 218 U.S. 245, 248 (1910) (Holmes, J.). The juror's claims of impartiality, of course, are not dispositive on the question of fixed bias. *State* v. *Kelly,* 131 Vt. 358, 361, 306 A.2d 89, 90 (1973); *Murphy* v. *Florida, supra; Holland* v. *State,* 87 Wis. 2d 567, 580, 275 N.W.2d 162, 169 (Ct. App. 1979). Although they deserve careful consideration, see *Murphy* v. *Florida, supra,* 421 U.S. at 800, 802, "it remains open to the defendant to demonstrate 'the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.' " *Id.* at 800 (quoting *Reynolds* v. *United States,* 98 U.S. 145, 157 (1878)); accord, *Lattrell* v. *Swain, supra; Fraser* v. *Blanchard,* 83 Vt. 136, 146, 73 A. 995, 999 (1909); *Irvin* v. *Dowd, supra,* 366 U.S. at 723; *State* v. *Patriarca, supra; Holland* v. *State, supra.*

■ The distinction, therefore, is between knowledge and bias. *Murphy* v. *Florida, supra,* 421 U.S. at 800 n.4. This voir dire reveals knowledge, but the mere fact that a juror has knowledge of a prior verdict or other fact relating to the

defendant does not disqualify her as a matter of law. E.g., *State* v. *Dragon,* 135 Vt. 168, 170, 376 A.2d 12, 13–14 (1977) ; *State* v. *Rickert,* 124 Vt. 380, 383, 205 A.2d 547, 550 (1964); *Murphy* v. *Florida, supra,* 421 U.S. at 800 ; *Commonwealth* v. *Richard, supra,* 384 N.E.2d at 638; Annot., *supra,* 6 A.L.R.3d at 526. The voir dire does not reveal a trace of bias or inflexiblity of the mind; on the contrary, this juror appears to harbor a confidence in her impartiality based on careful consideration. While again, this is not dispositive, in the absence of an indication of bias in the record we will not upset the determination of the trial judge, based, as it was, upon actual observation of the juror. Finally, the fact that the jury deliberated more than seven hours, asked that critical testimony be re-read, sought further legal instructions, and ultimately convicted of the lesser included offense of manslaughter, belies any imputation of bias. See *State* v. *Bartlett,* 137 Vt. 400, 406, 407 A.2d 163, 167 (1979); *State* v. *Beshaw,* 136 Vt. 311, 314, 388 A.2d 381, 383 (1978); *Tucker* v. *State,* 56 Wis. 2d 728, 736, 202 N.W.2d 897, 901 (1973). Accordingly, no error appears in the denial of the challenge for cause.

 Defendant's third claim on appeal is that the trial court committed reversible error by denying his motion to absent himself from the trial. Defendant specifically predicates an alleged right to be tried in absentia on V.R.Cr.P. 43(b) (1), but goes on to assert that this purported right has "constitutional dimensions," although he cites us to no decision which so holds. As we noted in the appeal from this defendant's first conviction:

> It is by no means clear to us that V.R.Cr.P. 43(b) (1) confers a right to be absent. The purpose of the Rule is no more than the protection of a criminal defendant's right to be present at his trial, and the prevention of the obstruction of that trial if the defendant absconds.

*State* v. *Hohman, supra,* 136 Vt. at 353, 392 A.2d at 942. See generally *United States* v. *Fitzpatrick,* 437 F.2d 19, 27 (2d Cir. 1970). While it is clear that defendant has a right to be present at trial, U.S. Const. amend. VI, and that constitutional rights can be waived, " '[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon

the opposite of that right,' " *Gannett Co.* v. *DePasquale,* 443 U.S. 368, 382 (1979) (quoting *Singer* v. *United States,* 380 U.S. 24, 34–35 (1965)). In the absence of any authority recognizing a constitutional right, we think the decision on a motion to be tried in absentia is best left to the trial court's discretion. No abuse of discretion having been shown here, we will not reverse on this ground.

■ Finally, defendant challenges the denial of his motion for a bifurcated trial on the issues of commission of the offense and insanity. He claims that this ruling denied him a fair trial by forcing him to choose between defending on the merits or on the insanity issue. Although defendant directs our attention to the District of Columbia, where bifurcation is common, in this state it is already established that bifurcation of the issues of commission of the offense and insanity is appropriate only under "extraordinary circumstances," and then only in the discretion of the trial court. *State* v. *Howe, supra,* 136 Vt. at 65, 386 A.2d at 1132. Furthermore, where there is no showing that defendant's defense on the merits is anything more than a pro forma decision to put the prosecution to its proof, even the District of Columbia has been unwilling to reverse the trial court's failure to direct bifurcation. *United States* v. *Grimes,* 421 F.2d 1119, 1121–23 & 1121 n.2 (D.C. Cir. 1969), *cert. denied,* 398 U.S. 932 (1970); *Harried* v. *United States,* 389 F.2d 281, 284 (D.C. Cir. 1967) (Burger, Cir. Judge). We do not find, and defendant has not shown, that the circumstances of this case required bifurcation.

After carefully examining defendant's claims of error, we cannot say that he was denied his substantial right to a fair trial. We affirm.

*Judgment affirmed.*