## State of Vermont v. Robert Allocco

[644 A.2d 835]

No. 93-048

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 20, 1994

*Scot Kline*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*David J. Williams* of *Sleigh & Williams*, St. Johnsbury, for Defendant-Appellant.

**Morse, J.** In this appeal from convictions for sexual assault and lewd and lascivious conduct with a child, 13 V.S.A. §§ 3252(a)(3), 2602, we decide that defendant's due process right to a fair trial as specified in 12 V.S.A. § 1943 (confinement and care of jury) was not violated when the jury, during deliberations, was allowed to separate overnight. We also reject defendant's other claims that error was committed when his prior bad acts and admissions were admitted in evidence and that the trial court denied him a fair trial because he was unable to hear adequately in the courtroom. We accordingly affirm.

In 1990, defendant became friends with the victim, the thirteen-year-old son of the woman who cleaned his house and business premises. In January 1992, defendant was charged with sexually abusing the boy while he was visiting at defendant's home. During the relationship, defendant lavished the boy with gifts, such as, more than a dozen pairs of jeans and ten pairs of sneakers, tennis lessons, dental work, and a computer for Christmas. The boy spent considerable time on weekends and school vacations at defendant's home, where he played video games, ping pong and tennis, and used a computer, watched movies and rode his bicycle. The boy also spent time at defendant's business where he wore a name tag indicating he was a vice president.

Coworkers noticed inappropriate behavior and reported it. At an initial interview by police, the boy did not reveal any wrongdoing by defendant. A day later, however, he did disclose abuse, which, according to the boy, occurred a number of times. One incident was described as defendant masturbating him as defendant masturbated

himself, and on two other occasions, defendant putting a finger into the boy's anus. These incidents were the basis of three charges, one of lewd and lascivious conduct with a child and two alleging sexual assault. Defendant acknowledged to police that he had seen the boy naked with an erection, at times hugged and kissed him, taken a photograph of the boy with only underwear on, and given him a copy of the Kinsey report. An explanation defendant gave to police for the allegation that he had touched the boy's penis was admitted in evidence, over defendant's objection. The investigating officer testified:

> I told Mr. Allocco that [the boy] told me directly that Mr. Allocco touched him on the penis. Mr. Allocco's response, to me was, "You know, it was locker room stuff. It was there so I grabbed it. We were just fooling around and I told him I would squeeze it if he didn't let go."

Defendant was convicted of lewd and lascivious conduct and one of the two counts of sexual assault.

## I.

On the last day of trial, at about 4:30 p.m., after the jury had been deliberating about two hours, the court told counsel, "A juror is going into insulin shock so they would like to stop for now . . . and start tomorrow morning." The following colloquy occurred:

> DEFENSE COUNSEL: Are we going to have an alternate take her place?
> THE COURT: No. Because we are stopping now.
> THE COURT OFFICER: If she gets her shot she will be all right.
> DEFENSE COUNSEL: All right.
> THE COURT: Eight-thirty tomorrow.
> DEFENSE COUNSEL: We would, perhaps in the morning have an update so that if we need to voir dire the jury.

A short recess was taken and court and counsel again talked, defense counsel expressing concern that the jury had dispersed without receiving instructions from the court not to discuss the case or learn about it from the media.*

---

* The colloquy went as follows:
 THE COURT: They are gone.
 DEFENSE COUNSEL: What do you mean, they are gone?

The next morning, defendant moved for a mistrial on the ground that he had not consented to the dispersal of the jury without a cautionary instruction. The court and counsel examined the jury, and the responses revealed that nothing improper had occurred which would adversely affect its deliberations. The motion was denied for lack of prejudice to defendant.

The statute governing jury deliberations, 12 V.S.A. § 1943, states:

### Confinement and care of jury

When the court has committed a cause to its consideration, the jury shall be confined until it agrees on a verdict or is discharged. While so confined, the jury shall be under the care of an officer appointed by the court and sworn for that purpose.

Our criminal rules moderate the statute by providing, in part, that the "court may allow the jury to separate during the trial." V.R.Cr.P. 23(d).

Defendant concedes that the jurors may separate after jury deliberations have started, but only if defendant expressly consents and the trial court gives "cautionary instructions." Defendant urges us to reverse a conviction obtained after a deliberating jury separates

---

COURT: When we went under the stairs, we saw one straggling out, and I said, "Are you the first or the last to leave?" And he said, "The last to leave."

PROSECUTOR: My suggestion is that I would put a phone call in to WCAX and ask them not to air it tonight. If it's not on the air there is nothing they will see. I'll make that request.

DEFENSE COUNSEL: Well, there was—for example, there was an article in the Free Press that basically said child abusers are everywhere. They are not a stereotype, and this is how you prevent it, boys and girls, so I don't know whether it will be in the Free Press.

PROSECUTOR: Well, they weren't here today. I'll make the call and see if we can work it out.

THE COURT: Okay.

PROSECUTOR: We don't want to do this again.

THE COURT: If you talk to Brian, tell him I asked, too.

DEFENSE COUNSEL: I spoke with him outside and the word I got from the cameraman was unless there was a verdict they weren't going to air anything, but they don't always tell me what they are going to do.

THE COURT: Well, that's good news. Okay. Thank you.

COURT OFFICER LITTLE: I told them not to read any newspaper articles on this case, don't watch any TV on this case, and anything else that happens to come on TV that has anything to do with this type of case, please avoid watching it.

PROSECUTOR: Very good, Sam.

DEFENSE COUNSEL: We should note for the record that Mr. Little is not a Court officer sworn to take care of the jury. This jury.

even if defendant did not object, citing a New York memorandum decision, *People v. Coons*, 551 N.E.2d 587, 552 N.Y.S.2d 94 (1990).

*Coons* is easily distinguished, because New York follows a standard of review more expansive than Vermont. As articulated in *Coons*, "[e]rrors which "'affect the organization of the court or the mode of proceedings prescribed by law'" need not be preserved and, even if acceded to, still present a question of law for this court to review." *Coons*, 551 N.E.2d at 588, 552 N.Y.S.2d at 95 (quoting *People v. Patterson*, 347 N.E.2d 898, 902, 383 N.Y.S.2d 573, 577 (1976), *aff'd*, 432 U.S. 197 (1977)). Allowing a jury to separate does not affect the subject matter jurisdiction of the court. There is no equivalent rule dispensing with preservation in Vermont.

We need not decide the scope of the court's discretion, if any, to allow a sequestered jury to separate when defendant does not consent. Defendant did not object to the dispersal of the jury. The sole issue preserved is the claim that the failure to instruct the jury to avoid contaminating influences required a mistrial in this case.

■ Defendant urges us, "at the very least," to hold that a mistrial is required unless the State rebuts a presumption that an uncautioned, separated jury is prejudicial. As a general principle, error does not require reversal unless it is prejudicial to the defendant. See *State v. Hohman*, 138 Vt. 502, 506, 420 A.2d 852, 855 (1980); *State v. Roberts*, 154 Vt. 59, 73, 574 A.2d 1248, 1255 (1990) (defendant must show that an unresponsive comment in police detective's testimony prejudiced him). Notwithstanding our general rule requiring a showing of harm to the moving party, any presumption of harm to defendant by the failure to instruct the jury prior to separation was rebutted in this case. No juror indicated when asked that anything occurred during separation to cause prejudice.

■ Ordinarily, periodic warnings to the jury about improper communications are appropriate. The jury was cautioned at the beginning of the trial not to discuss the trial with anyone and to refrain from learning about it from the media. Absent a showing of prejudice, the failure to caution the jury during the course of deliberations was not cause for a new trial.

## II.

Defendant claims he was unfairly disadvantaged because the trial court admitted evidence that he fondled the victim's penis on an occasion different from the one charged. Defendant bases his objec-

tion on a pretrial ruling that excluded evidence of "any other fondling act other than those charged." Defendant's position rests on an assertion that even if the evidence was admissible, he "shaped the defense strategy" according to the ruling that the fondling evidence would not be allowed.

Sexual activity of this nature *with the victim* may be admissible under the exception to V.R.E. 404(b) to explain, if relevant, the nature of the sexual relationship. See *State v. Forbes*, 161 Vt. 327, 331, 640 A.2d 13, 15 (1993) (defendant's history of incestuous relationship with daughter, which included uncharged misconduct, was admissible because it supplied the context within which the charged incidents of sexual contact occurred). Defendant's claim of detrimental reliance on the "law of the case," however, is incorrect. See *State v. Ryan*, 135 Vt. 491, 496–97, 380 A.2d 525, 528–29 (1977) (court must take into account defendant's strategy to "soften the impact" of incriminating evidence in deciding to postpone resolution of pretrial motion until time of trial; once decision is made, defendant is "entitled to rely on that ruling").

The court's pretrial ruling was not that defendant's statement about "locker room stuff" was inadmissible. The ruling excluding "any other fondling act other than those charged" was not implicated. Defendant's statement was not only an admission that he had touched the boy's penis, but also an explanation of why he did so. The fact that defendant's explanation of how the touching occurred differed from the boy's does not make it inadmissible under the court's pretrial ruling. It was obvious that the State did not offer defendant's explanation to prove that "locker room stuff" occurred; rather, it was offered to prove that defendant did, in fact, wrongfully touch the victim and that his explanation of why was merely a self-serving falsehood.

 Moreover, defendant's claim that his trial strategy suffered because he was not expecting that his admission would be allowed in evidence is not borne out. Defendant's statement was the subject of an unsuccessful motion to suppress, thereby alerting him that the State wished to use it. Even if the jury might believe defendant was talking about another touching incident than the one charged, defendant's version did not describe it as "fondling." It was "wrestling" and "locker room stuff," not a description of sexual touching. No mention below was made by defendant that his trial strategy was undermined nor does defendant convincingly explain on appeal how it was undermined. Defendant's claim of unfair surprise must be rejected.

## III.

The police questioned defendant at his office about their suspicions. No *Miranda* warnings were given. He claims the circumstances of the police presence placed him in a situation where he was not free to decline the interview. He contends that, being in custody, *Miranda* warnings were required, and in their absence his statements should have been suppressed. The trial court determined defendant was not in custody. We agree with the court's assessment.

A police detective in plain clothes went to defendant's place of business to question him. Defendant was the sole suspect for allegedly sexually abusing the victim. Probable cause had already been found, and a warrant to search defendant's residence had already been issued. The officer indicated to defendant that it would be best that they speak alone. Defendant agreed, and the interview, which lasted about an hour, was conducted in defendant's office. Defendant was not arrested or cited before the officer left.

Defendant does not challenge the facts found by the trial court. He argues they demonstrate that defendant was in custody, primarily because the detective told defendant he wanted to question him alone, even though defendant, who was nervous at the time, had asked him if a business partner could be present. In situations analogous, but even more "police dominated" than this, we have consistently upheld a trial court finding that defendant was not in custody for *Miranda* purposes. See, e.g., *State v. Lancto*, 155 Vt. 168, 171, 582 A.2d 448, 449 (1990) (questioning in police cruiser not "custodial" unless police conduct was "'calculated to break the suspect's will'") (quoting *State v. Olsen*, 153 Vt. 226, 230, 571 A.2d 619, 622 (1989) (quoting *Oregon v. Elstad*, 470 U.S. 298, 312 (1985))). The trial court's determination was not clearly erroneous. *Id.*

## IV.

Defendant's final argument is that he had difficulty hearing during the trial, and when he made the court aware of the problem, adequate steps were not taken to address it. He claims his right to confrontation was thereby violated. We agree with defendant that a court should take reasonable steps to accommodate any physical problems a defendant may have interacting with others during the proceedings. In this case, however, whatever merit there is to defendant's claim was not preserved for appeal.

After defendant made known his difficulty hearing in the courthouse's largest courtroom, the court moved the trial to an interme-

diate-sized courtroom. If defendant, as he claims, still had problems hearing in the smaller courtroom, the court would have been on notice to again try to remedy the problem; for instance, by asking participants to speak louder. The court had not moved the proceedings to the smallest courtroom, presumably because that alternative, as pointed out by the State, had the witness stand very close to the defense table. Rather than take issue with the State and ask that the trial take place in the smallest courtroom, defendant merely advised the court that the mid-sized courtroom was subject to "constant interruption and noise." At no time, until after the verdict, did defendant express he could not reasonably hear during the trial and object to the choice of courtrooms or suggest that another one would have suited him better. The claim was waived.

*Affirmed.*