# In re Gordon Hunt

[658 A.2d 919]

No. 93-397

Present: Dooley and Johnson, JJ., Valente and Jenkins, Supr. JJ., and Fisher, D.J., Specially Assigned

Opinion Filed January 27, 1995

Motion for Reargument Denied March 16, 1995

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Defender, Montpelier, for Petitioner-Appellant.

*Gary S. Kessler*, Supervising Appellate Prosecutor, Montpelier, and *Terry Trono*, Washington County State's Attorney, Barre, for Respondent-Appellee.

**Johnson, J.** Petitioner was convicted of first-degree murder and sentenced to a term of thirty years to life imprisonment. He appeals from the superior court's denial of his petition for post-conviction relief, in which he argued that he was denied his due process right to an impartial tribunal because former Associate Justice William Hill manipulated his case on the basis of the justice's friendship with former Assistant Judge Jane Wheel. We affirm the dismissal of the petition, but on different grounds than those relied on by the superior court.

I.

The relevant facts, described more fully in *In re Hill*, 152 Vt. 548, 562-70, 568 A.2d 361, 369-73 (1989), are as follows. Petitioner was charged with first-degree murder in 1982. He negotiated a plea bargain in which he agreed to plead guilty to second-degree murder in exchange for a minimum term not to exceed ten years to. life imprisonment. Although the presiding judge would have accepted the plea bargain, both assistant judges wanted to reject the agreement. The presiding judge did not challenge the assistant judges' authority to take part in the decision, and, accordingly, noted upon the record that "the judgement of the Court is that the plea agreement as proposed is rejected." Petitioner took an interlocutory appeal to this Court, arguing that lay assistant judges lack authority to overrule the presiding judge on whether to accept or reject a plea bargain. On May 11, 1984, Justice Hill voted with the majority of this Court in a 4-1

decision that affirmed the order rejecting the plea agreement. *State v. Hunt*, 145 Vt. 34, 485 A.2d 109 (1984) (hereinafter *Hunt I*).

Shortly after remand to the trial court, petitioner moved for the disqualification of one of the assistant judges, Jane Wheel, when he learned that she had attempted to influence the outcome of the interlocutory appeal by pressuring the Attorney General to support the assistant judges' position in the matter. The presiding judge granted the motion. Judge Wheel then filed a petition for extraordinary relief, addressed to Justice Hill, challenging her disqualification. Justice Hill stayed the presiding judge's order, and, in January 1985, this Court vacated the order disqualifying Judge Wheel but transferred venue in petitioner's case from the Chittenden Superior Court to the Lamoille Superior Court. Petitioner filed a motion for reconsideration, which was denied by a 4-1 vote, with Justice Hill in the majority.

In April 1985, petitioner was tried and convicted of first-degree murder in the Lamoille Superior Court. He appealed the conviction, and, in March 1987, while the appeal was pending, he moved for summary reversal of the conviction, charging that Justice Hill had improperly manipulated his case. The motion alleged that Justice Hill had conspired with Judge Wheel, based on his personal relationship with her, to have his case moved from the Chittenden Superior Court.

At the time the motion was heard, charges of misconduct against Justice Hill were pending in a proceeding before the Judicial Conduct Board. In March 1988, a panel of the Board issued a report finding, among other things, insufficient proof of allegations that Justice Hill and Judge Wheel improperly discussed issues pending in the *Hunt I* appeal, or that Justice Hill conspired with Judge Wheel to bring about a change in venue in petitioner's case. The Board adopted the panel's report.

Four months later, in September 1988, this Court issued a one-line entry order denying petitioner's motion for summary reversal. Shortly thereafter, this Court affirmed petitioner's conviction. *State v. Hunt*, 150 Vt. 483, 555 A.2d 369 (1988) (hereinafter *Hunt II*). In that case, we rejected petitioner's argument that the change of venue denied him a fair trial, concluding that he had failed to demonstrate prejudice resulting from the venue change.

In June 1992, petitioner filed the instant complaint, in which he argues that he was denied his due process right to an impartial tribunal in the proceedings culminating in both the *Hunt I* decision and this Court's January 1985 order transferring venue in his case.

He requested that the superior court vacate his conviction and "grant such other and further relief as it deems proper and equitable under the circumstances." At a status conference, the superior court asked the parties to brief the question of whether this Court's September 1988 order denying petitioner's motion for summary reversal constituted a decision on the merits, thereby barring consideration of petitioner's post-conviction relief claims. After hearing argument from the parties, the court dismissed the petition based on its conclusion that petitioner was precluded from relitigating his claims for relief because this Court had already considered and rejected these claims in *Hunt II* and in its order denying summary reversal.

On appeal, petitioner argues that (1) because he has never had an opportunity to prove the allegations raised in his petition, neither *Hunt II* nor this Court's order denying summary reversal preclude him from collaterally attacking his conviction on the ground that Justice Hill and Judge Wheel corruptly manipulated his case; and (2) Justice Hill's participation in *Hunt I* and the decision transferring venue in petitioner's trial constitutes a "structural" defect that is not subject to harmless-error analysis. Petitioner's position is that Justice Hill's contacts with, and efforts in support of, Judge Wheel denied his right to due process by creating, at minimum, the appearance that Justice Hill was biased, thereby requiring reversal of his conviction.

## II.

■ We conclude that, even assuming *Hunt I* and the venue-change order were tainted by Justice Hill's conduct, petitioner has already received the only available remedy — a fair trial. Accordingly, we affirm the dismissal of his petition without addressing his first argument. See *In re Graziani*, 156 Vt. 278, 280, 591 A.2d 91, 93 (1991) (decision of trial court may be affirmed on any legal ground, even if the trial court's ruling is based upon another ground).

### A. *A New Trial Is Not an Appropriate Remedy*

■ Petitioner argues that Justice Hill's participation in *Hunt I* and the venue-change order amounted to "structural error" that tainted his ensuing conviction. He concedes that he received a fair trial, albeit in a different venue than he would have preferred. Therefore, if petitioner is to prevail on this argument, he must show that the improper conduct of Justice Hill on appeal so seriously affected the entire judicial process that it is necessary to ignore the

fair trial he received to vindicate the "fundamental values of our judicial system and our society as a whole." See *Rose v. Mitchell*, 443 U.S. 545, 556 (1979) (because discrimination on basis of race in selection of grand jury strikes at fundamental values of judicial system and society as whole, reversal of ensuing conviction is warranted without inquiry whether defendant was prejudiced by discrimination).

The United States Supreme Court has reversed convictions, without any consideration of whether the defendant was prejudiced by a claimed constitutional error, when the error necessarily cast doubt on the fairness of the defendant's trial. *Rose v. Clark*, 478 U.S. 570, 577, 592 (1986) (majority and dissent agree that automatic reversal required when constitutional errors "necessarily render a trial fundamentally unfair"). For example, the Court has refused to consider whether errors were harmless in cases involving a biased trial judge, the total deprivation of the right to counsel at trial, the right to self-representation at trial, the right to a public trial, and the unlawful exclusion of members of the defendant's race from a grand jury. *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991) (citing cases). Each of the cases in which the Court has refused to apply harmless-error analysis involved a "structural defect" that affected the framework in which the trial proceeded, and thus, prevented the trial from serving its function as a vehicle for determining the guilt or innocence of the defendant. *Id.*; see *Clark*, 478 U.S. at 578, n.6 (errors that "either aborted the basic trial process, or denied it altogether" could never be harmless) (citations omitted).

Petitioner relies principally on the decision in *Vasquez v. Hillery*, 474 U.S. 254 (1991), for the proposition that judicial bias not directly affecting the trial should be treated as a structural error that requires reversal of the conviction without any consideration of whether the defendant was prejudiced. In *Vasquez*, the Court continued a long line of precedent holding that racial discrimination in the grand jury process invalidates a conviction, even if the conviction is obtained after an error-free trial. 474 U.S. at 260-61. The Court reasoned that the power vested in the grand jury to frame the indictment, to charge a greater or lesser number of offenses, and to decide the seriousness of the charges, including whether the offenses are capital or noncapital, affects the nature or very existence of the subsequent trial. *Id.* at 263. According to the Court, because racial discrimination in the selection of a grand jury "calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing

court can neither indulge a presumption of regularity nor evaluate the resulting harm." *Id.*

■■ In this case, the claims of judicial bias in *Hunt I* and the venue-change order are wholly unrelated to petitioner's trial or the framing of the charges against him. Therefore, *Vasquez* does not compel us to vacate the conviction. As we stated in *State v. Hohman*, 138 Vt. 502, 506, 420 A.2d 852, 855 (1980), *overruled on other grounds*, *Jones v. Shea*, 148 Vt. 307, 309, 532 A.2d 571, 572 (1987), wherein we required a showing of prejudice to reverse a conviction based on a claim of prosecutorial misconduct, "[u]nethical conduct, however worthy of censure, does not necessarily deprive a defendant of a fair trial, and is therefore distinguishable from prejudicial error." Given that petitioner received a full opportunity to defend against the crimes for which he was charged, and he "was tried by a fairly selected, impartial jury, supervised by an impartial judge," *Clark*, 478 U.S. at 579, we decline to order that the process be repeated. We would belittle the fundamental right to a fair trial if we were to determine that, under the circumstances of this case, a fair trial is an insufficient remedy. Cf. *Virgin Islands v. Scotland*, 614 F.2d 360, 365 (3d Cir. 1980) (no rational basis for holding that jury trial is sufficient for defendant who has not been offered plea bargain and insufficient for one who has). In short, a new trial is not an appropriate remedy because petitioner already received a fair trial that was untainted by the alleged unethical conduct.

## B. *Enforcement of the Plea Bargain is Not an Appropriate Remedy*

■ Given that petitioner was convicted after receiving a fair trial, the only other potential remedy for the alleged judicial misconduct is enforcement of the plea bargain reached with the state's attorney in Chittenden County. That remedy is not an appropriate remedy, however, because even if we were to vacate *Hunt I*,[1] petitioner is still left with a rejected, and thus unenforceable, agreement. See *United States v. Savage*, 978 F.2d 1136, 1138 (9th Cir. 1992) ("neither the defendant nor the government is bound by a plea agreement until it is approved by the court"); *United States v. Gonzalez*, 918 F.2d 1129, 1133 (3d Cir. 1990) ("It is axiomatic that a plea agreement is neither

---

[1] Petitioner has not asked us, and we are not prepared, to address the legal issue raised in *Hunt I*, which we consider to be settled precedent.

binding nor enforceable until it is accepted in open court."); *United States v. McGovern*, 822 F.2d 739, 744, 746 (8th Cir. 1987) (defendant is not justified in relying on terms of plea agreement until trial judge approves it and accepts guilty plea); cf. *State v. Delisle*, 162 Vt. 293, 299–300, 648 A.2d 632, 636 (1994) ("court is not bound by a plea agreement unless it informs the defendant that the strictest judgment and sentence it will impose is the one provided in the agreement"). Petitioner does not allege that the trial court's decision to reject the plea bargain resulted from unethical conduct. Further, assuming *Hunt I* was tainted, petitioner can only speculate as to what the outcome of that decision and his plea agreement would have been had Justice Hill's influence not been present. The fact remains that the original plea bargain was never accepted. We cannot return to petitioner that which he never received or had a right to receive.

 Because petitioner acquired no vested interest in the terms of the plea bargain, there is nothing to enforce and no showing of prejudice.[2] As the United States Supreme Court stated in a unanimous decision: "A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *Mabry v. Johnson*, 467 U.S. 504, 507 (1984). It is the ensuing conviction, not the plea bargain itself, that gives rise to the deprivation of the defendant's liberty. *Id.* at 508. Accordingly, when a plea agreement is withdrawn or rejected, and the defendant then pleads guilty pursuant to a new agreement or pleads not guilty and receives a fair trial, that defendant has not been deprived of his liberty in any fundamentally unfair way. See *id.* at 511; *People v. Navarroli*, 521 N.E.2d 891, 894, 896 (Ill. 1988) (State's repudiation of plea agreement

---

[2] In *State v. Hohman*, 138 Vt. 502, 420 A.2d 852 (1980), a prosecutor who was running for reelection promised that he would vigorously reprosecute a defendant whose murder conviction had been overturned. We stated that the prosecutor's unethical conduct clearly prejudiced the defendant at the plea bargaining stage of the proceedings. *Id.* at 507, 420 A.2d at 855. We held that reversal of the defendant's conviction was not warranted, however, because he could not have negotiated a plea bargain to an offense lower than manslaughter, the offense for which he was eventually convicted. *Id.* In dictum, this Court stated that if the defendant had been convicted of second-degree murder, "we would be required to reverse the conviction." *Id.* Assuming this analysis is correct, but see *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) (there is "no constitutional right to plea bargain"), the alleged prejudice in this case, unlike in *Hohman*, did not deny petitioner an opportunity to plea bargain; on the contrary, nothing prevented petitioner and the State from negotiating another plea agreement and presenting it to the Lamoille Superior Court.

did not deprive defendant of any constitutionally protected interest because he still had option of pleading not guilty and proceeding to trial).

█ Nor can petitioner claim that he is somehow entitled to specific performance of the plea bargain as the result of the venue-change order. He had no vested interest in having his trial held in Chittenden County, which was not the situs of the murder. Indeed, this Court has already determined that petitioner was not prejudiced by the venue-change order. See *Hunt II*, 150 Vt. at 491, 555 A.2d at 374. Because petitioner cannot obtain specific performance of the rejected plea bargain, and because he has already been given a fair trial, he has received the only remedy that this Court can offer him. Therefore, we affirm the superior court's dismissal of his petition for post-conviction relief.

*Affirmed.*